M9CCmil1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                              21 CR 478 (ER)

TREVOR MILTON,

            Defendant.

------------------------------x

New York, N.Y.
September 12, 2022
9:30 a.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JORDAN L. ESTES
     NICOLAS T. ROOS
     MATTHEW D. PODOLSKY
     Assistant United States Attorneys

MUKASEY FRENCHMAN, LLP
     Attorneys for Defendant
BY:  MARC L. MUKASEY
     KENNETH A. CARUSO
     TORREY K. YOUNG

CAHILL GORDON & REINDEL, LLP
     Attorney for Defendant
BY:  BRADLEY J. BONDI

M9CCmil1

THE COURT:  Good morning, everyone.  I understand from Mr. Mukasey that there are a couple of issues that the parties wish to raise.

MR. MUKASEY:  If I may, your Honor.  Just in terms of today, I guess there was some back and forth that we had on Thursday with requested supplements to your Honor's typical *voir dire*, parts 1 and 2.  We put in our requests, I'm not going to reiterate them.  I just want to make a comment about the government's request, which was to name all the lawyers who have entered notices of appearance in this matter on behalf of Mr. Milton.  There were multiple lawyers at various times.  It's our request that the jury only be told about the four lawyers sitting at counsel table and, relatedly, that the Court not identify that we come from private law firms.  That's my first housekeeping issue.

THE COURT:  Did you want to comment?

MR. ROOS:  Yes, your Honor.  It's a pretty straightforward bias issue.  We're not asking that attorneys who are never going to set foot in the courtroom appear, but there are some attorneys at counsel table, there is attorneys in the first row.  We just want to make sure the jurors don't know any of the faces who are here, and the name of the law firms I think is equally reasonable.  The idea is, let's say somebody has a cousin who is a secretary or an assistant and they don't recognize Mr. Mukasey, but upon hearing the firm

M9CCmil1

name, they recognize it.  So that's the reason for our request. If, during the course of the three- or four-week trial, a person is never going to set foot in the courtroom or they're no longer an attorney for Mr. Milton, we're not asking to name them beyond there.  We want to make sure everyone in the first row and at counsel table is named to the jury.

MR. MUKASEY:  I think we can now come to an agreement, because I may have misunderstood.  If these lawyers are simply going to be on the list of names you may hear, I don't mind that, but if they're included as part of the lawyers that are representing Mr. Milton are, Mr. Mukasey, please stand, I don't want to have eight people in the gallery on that list.

THE COURT:  From my perspective, I really don't see an issue.  The only point of this exercise is to identify individuals affiliated with Mr. Milton's attorneys and Mr. Milton's law firms to see whether anyone recognizes a name or recognizes the law firm.  It's just a method to weed out individuals who might have some familiarity with the lawyers or the law firms, and it's really for that purpose.  Also, it will be coming from me and it's the first day of trial, they will have forgotten by lunch, the list of names, so I really don't see how Mr. Milton could possibly be prejudiced.

And, by the way, the decision has been made, the forms are done, so the application is denied.

Any other things?

MR. MUKASEY:  The other issue certainly doesn't need to be dealt with today, but just previewing it for tomorrow. We had mentioned on Thursday that it was our position that with respect to the audio transcripts, the audiotapes and corresponding transcripts that the government is going to play during the trial, and there are 20 or 30 of them, that it's our position, as a matter of law, that the full recording should come in as part of the total mix of information, but that, of course, we would only play a snippet for the jury, and we invoke the Rule of Completeness.

I wanted to cite a case for your Honor that I think could stand for two propositions:  One, that an entire document can come in rather than a snippet if it's required to clarify. But, secondly, the notion that the rule of completeness, 106, and its common law corollary or its common law parent, I guess, allows for the completion of the statement to come not necessarily from the same document or audio, but from another one, from a related document.

So you don't have to counter the government's designation in document A with a corresponding designation from document A, but you can counter it with a corresponding clarifying statement from document B as long as it's related. I can give you a cite for that, if your Honor pleases.

THE COURT:  Sure.  Just so that I'm clear, what you're saying is if Mr. Milton gave an interview — I think we went

M9CCmil1

over this last Thursday — on a Tuesday and you believe that, in fairness, some snippet of an interview that he gave the following Thursday ought to come in, there is case law support for that?

MR. MUKASEY:  If it's on the same topic and they're related.  That's the term that's used in the case, "related."

THE COURT:  I guess my question would be -- there is going to be a lot of related terms, a lot of related issues.

MR. MUKASEY:  Correct.

THE COURT:  So any time that Mr. Milton speaks on a topic on a particular day, do you intend to offer what you would proffer to be related terms that he made on two, three, ten, fifteen subsequent occasions?

MR. MUKASEY:  We think that because the government is trying this case not really on a tit-for-tat basis, they're trying a six- to eight-month-long scheme, alleging repeated misstatements about repeated topics.  To defend that, we need to be able to offer the counterstatements on those topics.  The counterstatements aren't always made at the exact same moment or the exact same appearance that the government's statement is made.

THE COURT:  Okay.  I'm happy to take your cite.

MR. MUKASEY:  Case I'm referring to is called *Phoenix*, Judge, 60 F.3d 95, 102, 103.  It talks about both Federal Rule of Evidence 106 and the common law corollary.

M9CCmil1

THE COURT:  What circuit is that?

MR. MUKASEY:  That's the Second Circuit, Judge Meskill.

THE COURT:  It grazes a couple of issues.  One, let's say that there are multiple statements that you believe relate to that particular subject matter and ought, in fairness, be introduced at the same time.  Isn't there some limiting principle that I can say enough, one, two, but I'm not going to let you put in 15 counterstatements during the government's case?

MR. MUKASEY:  I think we're working in good faith with the government to try to agree on designations.  Thus far, we've kept it limited to one podcast at a time.  You do minute one through two and we're going to counter with minute three through five.  Unfortunately, you can't always counter with something from that podcast.

THE COURT:  Okay.  Does the government have a view on any of this?

MR. PODOLSKY:  We do, your Honor.  A few things. First of all, we're happy to look at the case cited by Mr. Mukasey.  I would just say that on the Rule of Completeness, there are a number of more recent Second Circuit cases that I think make it very clear what the Rule of Completeness is, which is if it is necessary to complete the understanding of that particular statement, it comes in.  It's

M9CCmil1

not just if you want to provide an argument, you get to put in whatever you want.  That's number one.

Number 2, I think we keep having a little bit of a slippery argument on evidence here because it may be that there are particular snippets or particular pieces of evidence that the defense can provide a sufficient basis for relevance or overcome a hearsay objection that it comes in, but what we keep hearing is that just sort of any abstract the defense kind of wants to offer whatever they want and it's certainly not a rule of evidence that the defense can just offer any statement of their own client based on the sort of argument that they think it should be contextualized.  We're happy to take up particular recordings, particular sections or portions as they come up, but I don't think we could make a generalized rule that whatever the defense thinks is relevant comes in.

THE COURT:  That's certainly the reason for my questions to Mr. Mukasey.  I think that they're obviously each item that's presented by the government, there has to be a determination whether the snippet that is counter-proposed has to be included or should be included at the same time in fairness.  So, hopefully, you folks will continue to talk and we'll come to some agreement as to what, if any, counterstatements come in pursuant to the rule.  If there is any disagreement, obviously, then you can come back.

MR. MUKASEY:  Thank you, Judge.  And I just want to be

clear because we want to avoid, at all costs — and I think I speak for both parties in saying this — any delay and kind of time wasting in front of a jury or disagreement.  It is going to be our position throughout the trial that the full podcast or audiotape or interview or whatever it is ought to be admitted as it goes to the total mix of information available to investors.  That may be something where your Honor wants to rule and we make a standing objection and then we designate snippets thereafter, but I think, for the record, we want to preserve the issue.

THE COURT:  I understand.  I think we concluded this on Thursday, but my reaction is that to the extent that the government is going to put in anything on particular interview or podcast, the entirety of that interview or podcast is presumptively permissible.  What I hope to avoid is that you play the entirety of the interview or podcast and that you just play those very relevant snippets.

MR. MUKASEY:  Not in our plans.  We're on the same page.  Thank you.

MR. PODOLSKY:  Here's the problem, and I do want to avoid wasting a lot of time, especially while trial begins, although we've tried to do some of this in advance.  Many of these lengthy podcasts are truly irrelevant sections, claims by Mr. Milton about his family life and things that really shouldn't go in front of the jury.

Here's what we think would not be appropriate. The defense puts into evidence hours and hours and hours of podcasts, they're not the subject of any argument, any discussion, anything at trial, and then the jury goes back and they've got hundreds of hours of recordings they have no idea what to do with, they have no idea what the relevance is, they've not been connected to anything at trial. And now the jury is sort of given this notion, well, what do we do, we don't know what all this evidence is.

We think the evidence in the case should be focused. If it is relevant, if it is a relevant portion of the podcast, fine, that should come in, but the idea that we should just push it in, hours and hours and hours of recordings that have no connection, the lawyers don't intend to tell the jury anything, I think is surely a recipe for juror confusion and a waste of time.

THE COURT: Not if the lawyers focus the jury, right? I have never been aware of any jury that, on its own, because there is any number of securities cases that I've presided over where the government puts in the SEC filings, which comprise of hundreds and hundreds of pages, and either the government or the defense brings the jury's attention to those parts of the filings that are not relevant to the case and the jury gets the hundreds and hundreds of pages of filings. Never have I sat through jury deliberations and weeks go by and they tell me

M9CCmil1

that they're reading the SEC filings.  I don't anticipate that that will be an issue.  I haven't seen the podcast, I haven't listened to the interviews, but if there are portions that you believe are irrelevant and ought not to be included, then you should let me know that and we can talk about it, but they are, again, presumptively admissible, I believe, just like the SEC filings are presumptively permissible.

MR. PODOLSKY:  Maybe what makes sense, your Honor, maybe later today or tomorrow we can start pointing to some of the recordings and showing that much of them are repetitive, cumulative or frankly irrelevant.

THE COURT:  All reasons for keeping stuff out.  Okay?

MR. MUKASEY:  Thank you.

THE COURT:  The venire will be ready between 10:30 and 10:45, so I'm happy to sit and talk with you folks, but if there is nothing more to raise, you're free until, let's say, 10:30.

(Recess)

(Continued on next page)

M9c2Mil2

(Jury of 12 and four alternates impaneled and sworn)

THE COURT:  Folks, you may be seated.  I'm just going to keep you for a couple of minutes more and then we will let you go.  As I indicated earlier today, our trial day will run from 9:30 in the morning until 2:40 in the afternoon.  There will be two 20-minute breaks.  We will be providing refreshments and breakfast for you in the morning hopefully to entice you to get here on time.  And because the breaks will be so short, we will have some refreshments and snacks for you throughout the day so that strictly speaking you don't have to leave the building to go out and get lunch.  If you want to bring something on your own, obviously feel free to do so.

A couple of things that I want to make sure that you understand as completely as you possibly can.  There are, if you count the number of people in the jury box, the number of people on my staff, the court reporters, the prosecution team, the defense team, it's 29 people, and you remember when we came back from lunch we waited 20 minutes because some of you were not here yet, and that's what happens throughout the trial.  If any one of you is late, 28 of us will be sitting around basically waiting on you.  Okay?  So please, please make every effort.  I always encourage people to be here no later than 9:15 in the morning, that way you can grab a cup of coffee and a danish up in the jury room and we can get started at 9:30.

My solemn commitment to you is to make sure that I get

M9c2Mil2

started at 9:30, I will make sure that the parties are here, I will make sure that my staff is here and that nothing is going to prevent us from starting at 9:30; that our breaks are 20 minutes and no longer; and that I send you home at 2:40 in the afternoon.  That is my solemn commitment to you.  So please do try to be here early so that we can get you back to your normal lives as quickly and as efficiently as possible.

Now, I am going to read you some preliminary instructions concerning the conduct of the trial and how you should conduct yourselves, how the parties will conduct themselves with respect to you to make sure that both sides get the fair trial that they are entitled to.  So again, some instructions this evening, I will give you some additional instructions on the law tomorrow morning before we get started, but before you leave, please know the following:

In order to ensure that you decide the case only on the evidence and that you not be influenced in any way by anything that might occur outside the courtroom, I must give you a specific set of instructions.

First, do not discuss the case with anyone while the case is going on.  That includes friends and members of your own family.  You may tell your friends and family that you are a juror in a case and that it is expected to last four or five weeks or so, but don't tell them anything else about the case until after you have been discharged.  Not discussing the case

M9c2Mil2

includes tweeting and posting on Instagram, Facebook, TikTok, and the like.

My instruction that you not discuss the case also includes not discussing it even amongst yourselves while the trial is going on. It will be your duty to discuss the case amongst yourselves later on, but that can happen only after all of the evidence is in and the case is given to you to discuss and decide in the jury room.

Next, you are not to read anything in the newspapers or elsewhere about this case if that should occur. Also, you are not to listen or to view any reporting about this case if it should be broadcast on TV, over the radio, or on the Internet.

Next, don't do any research or any investigation about the case on your own. Do not go visit any place you may hear described during the trial. Do not do any research on the Internet or in the library or in any other way. Don't Google anyone.

Next, you are not allowed to -- you are not to allow anyone to speak to you about this case. If you are approached by anyone to speak about it, politely tell them that the judge has directed you not to do so. If any person approaches you or seeks to contact you about the case, you are required to report the incident promptly to me and you can do that by telling Ms. Rivera.

M9c2Mil2

The lawyers, the parties, and the witnesses are not supposed to talk to the jury outside of the courtroom, even to offer a friendly greeting.  So if you happen to see any of them outside the courtroom, they will and they should ignore you.

Please take no offense to this.  They will only be acting properly by doing so.  Indeed, they will be following my express instructions.  Courts have a hard and fast rule that the lawyers, parties, and witnesses cannot speak to jurors, period.  Okay?

So with that, I'm going to have Ms. Rivera take you to the jury room where you will be -- she will give you the pass for getting in and out of the jury room.  That's where you will report tomorrow.  Please plan on being in the jury room no later than 9:15 tomorrow morning.  Please work into your travel plan the fact that you have to get through security in order to get into the building, and there is sometimes a line at the security desk.  So please do try to be here early.  We will have coffee and danish for you hopefully tomorrow morning. Don't get too excited about it.  It's the stuff from our own cafeteria, so we take what we can.

And with that, I will leave you in Ms. Rivera's hands. Do not discuss the case.  Be safe traveling home, and we will see you tomorrow morning.

THE DEPUTY CLERK:  All rise.

(Jury not present)

M9c2Mil2

THE COURT:  Folks can be seated.  Anything else we need to do today?

MR. MUKASEY:  I was just hoping that for tomorrow's jury addresses maybe we can steal a podium from somewhere.

THE COURT:  Yes.  I thought that we had one already, but we have a podium that will be placed in the vicinity of the front of the jury box.  Okay?

MR. MUKASEY:  Thank you.

THE COURT:  Any sense of how long the openings will be?

MR. ROOS:  For us probably 15, 20 minutes.

THE COURT:  Okay.

MR. MUKASEY:  Maybe slightly longer, maybe 20 to 25.

THE COURT:  Very well.  And do you have a set of witnesses ready to go?

MR. PODOLSKY:  We do, your Honor.

THE COURT:  And defense knows who they are?

MR. PODOLSKY:  They do, your Honor.

THE COURT:  All right.  Unless there is anything else for me, we are adjourned.  Thank you very much.  See you tomorrow.

(Adjourned to Tuesday, September 13, 2022, at 9:30 a.m.)