Mae2Mil1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                          21 CR 478 (ER)

5    TREVOR MILTON,

6                    Defendant.

7    ------------------------------x
                                           New York, N.Y.
8
                                           October 14, 2022
9                                          9:00 a.m.

10   Before:

11
                         HON. EDGARDO RAMOS,
12
                                           District Judge
13

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JORDAN L. ESTES
17        NICOLAS T. ROOS
          MATTHEW D. PODOLSKY
18        Assistant United States Attorneys

19   MUKASEY FRENCHMAN, LLP
          Attorneys for Defendant
20   BY:  MARC L. MUKASEY
          KENNETH A. CARUSO
21        TORREY K. YOUNG

22   CAHILL GORDON & REINDEL, LLP
          Attorney for Defendant
23   BY:  BRADLEY J. BONDI

24

25

Mae2Mil1

1           (Trial resumed; jury not present)

2           THE COURT:  Mr. Roos, you look like you want to say

3      something.

4           MR. ROOS:  A small thing.  Mr. Milton wasn't present

5      for parts one, two, or three of the charge conference.

6           THE COURT:  One more time.

7           MR. ROOS:  Mr. Milton wasn't present for any of the

8      charge conference, and I believe his appearance was waived for

9      the first one, but I just want to put on the record we

10     understand that his appearance is waived for all of the charge

11     conferences.

12          THE COURT:  I believe it was waived for all of the

13     charge conferences.  Is that correct?

14          MR. MUKASEY:  That was our understanding; and, if not,

15     he retroactively waives his right to have been there.

16          THE COURT:  Anything else?

17          MR. ROOS:  That's all I have got.

18          MR. MUKASEY:  I have two issues, Judge——one related to

19     rebuttal and one related to the jury charge.

20          Starting with the rebuttal, we thought it was an

21     unfair and improper analogy to analogize Mr. Milton to not just

22     a bank robber, but a bank robber who goes into the bank with a

23     shotgun.  And I understand very, very loosely what Mr. Podolsky

24     was trying to say, but we think it would be proper and

25     necessary to tell the jury that Mr. Podolsky was making an

Mae2Mil1

1      argument, not to be held against him, but certainly the analogy

2      to a bank robbery has nothing to do with this case or

3      Mr. Milton.

4                  THE COURT:  Why?

5                  MR. MUKASEY:  It was an violent image and unfair and

6      out of bounds.

7                  MR. ROOS:  It is not about our case.  He said "let me

8      give you an analogy" before doing it and your Honor overruled

9      the objection at the time, so I don't think there is any sort

10     of curative objection that's necessary.

11                 THE COURT:  I don't think a curative instruction is

12     necessary.  The jury will be told again during the course of

13     the instructions that anything the lawyers said during the

14     course of their summations was not evidence; it is simply

15     argument.  But I guess the notion of an armed bank robbery is

16     something that is -- something that's known, and I don't think

17     it was particularly evocative of something that was untoward,

18     and it could have been any number of things.  I don't think it

19     is unduly prejudicial.

20                 MR. MUKASEY:  Okay.  Well, for the record, we are

21     going to move for a mistrial because of that.  You can deny it,

22     as I am sure you will.

23                 THE COURT:  It is denied.

24                 MR. MUKASEY:  The second point, and this is, I guess,

25     obviously well within your discretion, and I guess I'm sort of

Mae2Mil1

1    interested in hearing what the government thinks, because the

2    jury is getting the case after having been here a month and

3    because it will start deliberating what's been a complicated

4    case on what is in essence a Friday, late Friday morning, we

5    thought it might be prudent to instruct the jury that they can

6    stay here, you know, as long as they want tonight, which I

7    think you did say yesterday, and that, you know, the courthouse

8    is open on Monday if they need to keep going.  I just don't

9    want there to be an artificial ending point today at 2:40 or

10   today at 5:00 or something.

11          THE COURT:  I will make that point, not in so many

12   words, but let them know that from this point forward, for

13   however long the deliberations take, the schedule is in their

14   hands; they can continue to stay until 2:30 or they can come

15   back earlier Monday than 9:30 to begin deliberations, etc.

16          MR. MUKASEY:  Yes.  I think a mention of Monday, just

17   so they know it is an option.

18          THE COURT:  Absolutely.

19          MR. MUKASEY:  Thank you, Judge.

20          MR. ROOS:  Just one question about the jurors.  I

21   noticed a few coughing, and maybe I'm just scarred by our

22   ten-day hiatus, but what is your Honor's plan with the

23   alternates?

24          THE COURT:  With the alternates?

25          MR. ROOS:  Yes.

Mae2Mil1

1    THE COURT:  The alternates will be told——it's in the

2 instructions——that they will be released for now but they are

3 not yet done that they should continue not to read anything

4 about the case and that it's possible they may be called in at

5 some point if one of the first 12 is unable to continue

6 deliberations.

7    MR. ROOS:  Great.

8    MR. MUKASEY:  Thank you, your Honor.

9    THE COURT:  Okay.

10    (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mae2Mil1                    Charge

1          (Jury present)

2          THE COURT:  Ladies and gentlemen of the jury, good

3     morning, and thank you as always for being so prompt.

4          You all have a binder in your seats.  This binder

5     contains three documents.  It contains the indictment which

6     charged Mr. Milton.  As I will tell you in these instructions,

7     the indictment is not evidence of any kind.  It also includes

8     the instructions which I am about to read you.  You don't need

9     to attempt to memorize what I tell you because you will have

10    the instructions with you as you deliberate.  And the binder

11    also has a verdict form at the end, so each of you have a copy

12    of the verdict form.  However, we will only need one when you

13    reach your verdict.  It is just simply there for your

14    information.

15         I will be reading the instructions.  It is 37 pages.

16    And if history is any guide, it will take me about an hour to

17    read through this because I need to do so deliberately so,

18    obviously, the court reporter can take everything down.  If at

19    any point you need to get up and stretch, I will not take

20    offense if you do that.

21         As I indicated, you will have it with you.  If you

22    want to read along, you are free to do so.  If you simply want

23    to sit and listen, you can do that.  Whatever makes you most

24    comfortable.  Okay?  Okay.

25         So let's begin.  The instructions, page 1 is several

Mae2Mil1                    Charge

1    pages into the binder.  Let me know when you are all there.  It

2    appears that you all are.  Very well.

3              Members of the jury, we have almost reached that point

4    where you will begin your final function as jurors.  As you all

5    appreciate, this is one of the most important duties of

6    citizenship in this country.

7              My instructions to you will be in four parts.  First,

8    I will give you some introductory instructions about the role

9    of the Court and of the jury, and about the presumption of

10   innocence and the government's burden of proof.  Second, I will

11   describe the charges and the law governing those charges, which

12   you will apply to the facts as you find them to be established

13   by the proof.  Third, I will give you instructions concerning

14   the evaluation of evidence.  And the fourth and final section

15   of these instructions will relate to your deliberations.

16             I will first describe the role of the Court and of the

17   jury.

18             It is my duty to instruct you as to the law, and it is

19   your duty to accept these instructions of law and apply them to

20   the facts as you determine them.  If an attorney stated a legal

21   principle different from any that I state to you in my

22   instructions, it is my instructions you must follow.  You

23   should not single out any instruction as alone stating the law,

24   but you should consider my instructions as a whole when you

25   retire to deliberate.  You should not be concerned about the

1   wisdom of any rule that I state.  Regardless of any opinion you

2   may have about what the law may be or ought to be, it would be

3   a violation of your oath to base your verdict on any view of

4   the law other than that which I give you.

5       You, the members of the jury, are the sole and

6   exclusive judges of the facts.  You pass on the evidence,

7   determine the credibility of witnesses, resolve such conflicts

8   as there may be in the testimony, draw whatever reasonable

9   inferences you decide to draw from the facts as you determine

10  them, and determine the weight of the evidence.  In doing so,

11  remember that you took an oath to render judgment impartially

12  and fairly, without prejudice or sympathy or fear, based solely

13  on the evidence and the applicable law.

14      The fact that the prosecution is brought in the name

15  of the United States of America entitles the government to no

16  greater consideration than that given to any other party to

17  this litigation.  By the same token, the government is entitled

18  to no less consideration.

19      The defendant, Trevor Milton, has pleaded not guilty

20  and has denied every charge against him.  That means the

21  government has the burden of proof to prove him guilty beyond a

22  reasonable doubt.  That burden of proof never shifts to

23  Mr. Milton.  A defendant in a criminal case never has the

24  burden to call any witnesses or produce any evidence.  Even

25  though Mr. Milton has presented evidence in his defense, it is

Mae2Mill1                    Charge

not his burden to prove himself not guilty.  It is always the government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt.

In other words, Mr. Milton starts with a clean slate. He is presumed innocent of all charges against him, and he must be presumed innocent by you throughout your deliberations, until such time, if ever, as you as a jury unanimously find that the government has proven him guilty beyond a reasonable doubt.  The presumption of innocence alone requires you to acquit Mr. Milton if the government fails to prove him guilty beyond a reasonable doubt.

Since, in order to convict Mr. Milton of a given charge, the government is required to prove that charge beyond a reasonable doubt, the question then is:  What is reasonable doubt?  The words almost define themselves.  It is a doubt based upon reason.  It is a doubt that a reasonable person has after carefully weighing all of the evidence.  It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of a convincing character that a reasonable person would not hesitate to rely upon in making an important decision.

A reasonable doubt is not caprice or whim.  It is not speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  The law does not require

Mae2Mil1                          Charge

 1   that the government prove guilt beyond all possible

 2   doubt: proof beyond a reasonable doubt is sufficient to

 3   convict.

 4          If, after fair and impartial consideration of the

 5   evidence, you have a reasonable doubt as to Mr. Milton's guilt

 6   with respect to a particular charge against him, you must find

 7   him not guilty of that charge.  On the other hand, if after

 8   fair and impartial consideration of all the evidence you are

 9   satisfied beyond a reasonable doubt of Mr. Milton's guilt with

10   respect to a particular charge against him, you should find him

11   guilty of that charge.

12          Let us now turn to the specific charges in the

13   indictment.  An indictment is simply an accusation.  It is no

14   more than the means by which a criminal case is started.  It

15   creates no presumption and it permits no inference that

16   Mr. Milton is guilty.  The indictment in this case is not

17   evidence.  It merely describes the charges against Mr. Milton.

18   It is a set of accusations.  It may not be considered by you as

19   evidence of Mr. Milton's guilt.  Only the evidence or lack of

20   evidence introduced at the trial in this case decides that

21   issue.

22          The indictment alleges that from approximately

23   November 2019 through September 2020, Mr. Milton devised a

24   scheme to defraud investors in his company, Nikola, an

25   electric- and hydrogen-powered vehicle and energy company,

Mae2Mil1                    Charge

through false and misleading statements regarding the company's

product, technology, and business development.  It also alleges

that from approximately April 2020 through March 2021,

Mr. Milton devised a scheme to obtain money and property by

means of false and fraudulent pretenses in connection with his

purchase of the Wasatch Creeks Ranch.

         The indictment contains four counts, or charges.  I

will, at times, refer to each count by the number assigned to

it in the indictment.  You should know that there is no

significance to the order of these charges or the specific

number of counts charged.  In your deliberations and in

reaching your verdict, you must consider each count separately

and you must return a separate verdict as to each count.

         Counts One, Two, and Three relate to Mr. Milton's

alleged actions to defraud investors from November 2019 to

September 2020.  Count One charges Mr. Milton with securities

fraud under Title 15 of the United States Code.  Count Two

charges Mr. Milton with securities fraud under Title 18 of the

United States Code.  Count Three charges Mr. Milton with wire

fraud as to those same actions from November 2019 to September

2020.  Count Four charges Mr. Milton with wire fraud as to his

actions from April 2020 through March 2021 relating to his

purchase of the Wasatch Creeks Ranch.

         In a few moments, I will instruct you on each of these

charges in more detail.

Mae2Mil1                         Charge

1          You must consider each individual charge separately

2    and evaluate each on the proof or lack of proof that relates to

3    that charge.  You must consider whether the government has

4    carried its burden of proof with respect to each element of

5    each count.  Your verdict on any single count should not

6    control your decision on any other count.  I will provide you

7    with a verdict form and you will need to report the results of

8    your deliberations on the verdict form.

9          Let us turn first to Count One of Title 15, the

10   securities fraud charge.  Count One alleges that from November

11   2019 through September 2020, Mr. Milton devised a scheme to

12   defraud investors in his company, Nikola, through false and

13   misleading statements regarding the company's product,

14   technology, and business development.  The law provides in

15   relevant part "it shall be unlawful for any person, directly or

16   indirectly, by the use of any means or instrumentality of

17   interstate commerce or of the mails, or of any facility of any

18   national securities exchange . . . to use or employ, in

19   connection with the purchase or sale of any security registered

20   on a national securities exchange or any security not so

21   registered, or any security-based swap agreement . . . any

22   manipulative or deceptive device or contrivance in

23   contravention of such rules and regulations as the [Securities

24   and Exchange] Commission may describe as necessary or

25   appropriate in the public interest or for the protection of

Mae2Mil1                          Charge

1   investors."

2                   In order to meet its burden of proof on this count,

3   the government must prove each of the following three elements

4   beyond a reasonable doubt:

5                   First, that in connection with the purchase or sale of

6   securities, Mr. Milton did any one or more of the following:

7                   (1) employed a device, scheme, or artifice to defraud,

8   or

9                   (2) made an untrue statement of a material fact or

10  omitted to state a material fact which made what was said,

11  under the circumstances, misleading, or

12                  (3) engaged in an act, practice, or course of business

13  that operated, or would operate, as a fraud or deceit upon a

14  purchaser or seller;

15                  Second, that Mr. Milton acted knowingly, willfully,

16  and with an intent to defraud; and

17                  Third, that in furtherance of the fraudulent conduct,

18  there occurred at least one use of any means or instruments of

19  transportation or communication in interstate commerce, or the

20  use of the mails, or the use of any facility of any national

21  securities exchange.

22                  The first element that the government must prove

23  beyond a reasonable doubt is that, in connection with the

24  purchase or sale of securities, Mr. Milton did any one or more

25  of the following: employed a device, scheme, or artifice to

Mae2Mil1                          Charge

defraud; made an untrue statement of material fact, or omitted

to state a material fact which made what was said, under the

circumstances, misleading; or engaged in an act, practice, or

course of business that operated, or would operate, as a fraud

or deceit upon a purchaser or seller of Nikola or VectoIQ

securities.

A "device, scheme, or artifice to defraud" is merely a

plan to accomplish a fraudulent objective.  A "scheme to

defraud" is a pattern or course of conduct concerning a

material matter designed to deceive a person.  "Fraud" is a

general term that embraces all efforts and means that

individuals devise to deceive and take advantage of others.

A statement, representation, claim, or document is

false if it is untrue when made and was then known to be untrue

by the person making it or causing it to be made.  A

representation or statement is fraudulent if it was made with

the intent to deceive.  The concealment of material facts in a

manner that makes what was said or represented deliberately

misleading may also constitute false or fraudulent statements

under the statute.  The failure to disclose information may

also constitute a fraudulent representation if the defendant

was under a legal, professional, or contractual duty to make

such a disclosure, the defendant actually knew such disclosure

was required to be made, and the defendant failed to make such

disclosure with the intent to defraud.

Mae2Mil1                          Charge

1          It is not necessary for the government to establish

2     all three types of fraudulent conduct.  But to find the

3     government has proven the first element, you must be unanimous

4     as to at least one type of conduct you find to have been proven

5     beyond a reasonable doubt.

6          You cannot find that the government has proven the

7     first element of securities fraud unless you find that

8     Mr. Milton participated in fraudulent conduct that was "in

9     connection with" a purchase or sale of securities.  The

10    requirement that the fraudulent conduct be "in connection with"

11    a purchase or sale of securities is satisfied so long as there

12    was some nexus or relation between the allegedly fraudulent

13    conduct and the sale or purchase of securities.  Fraudulent

14    conduct may be "in connection with" the sale or purchase -- the

15    purchase or sale of securities if you find that the alleged

16    fraudulent conduct coincided with a securities transaction.

17    You need not find that Mr. Milton actually participated in any

18    specific purchase or sale of a security if you find that he

19    participated in fraudulent conduct that was "in connection

20    with" a "purchase or sale" of securities.

21          It is not necessary for you to find that Mr. Milton

22    was or would be the actual seller of the securities.  It is

23    sufficient if the misrepresentation or omission of material

24    fact involved the purchase or sale of securities.  By the same

25    token, the government need not prove that he personally made

1    the misrepresentation or that he omitted the material fact.  It

2    is sufficient if the government establishes that Mr. Milton

3    caused the statement to be made or the fact to be omitted.

4    With regard to the alleged misrepresentations and omissions,

5    you must determine whether the statements were true or false

6    when made and, in the case of alleged omissions, whether the

7    omissions were misleading.

8            If you find that the government has established beyond

9    a reasonable doubt that a statement was false or a statement

10   was omitted, rendering the statements that were made

11   misleading, you must next determine whether the statement or

12   omission was material under the circumstances.  The word

13   "material" here refers to the nature of the false or misleading

14   statements.  We use the word "material" to distinguish between

15   the kinds of statements we care about and those that are of no

16   real importance.  Matters that are "material" may also include

17   fraudulent half-truths or omissions of material fact.  A

18   material fact is one as to which there is a substantial

19   likelihood that a reasonable investor would have considered

20   important in making his or her investment decision in light of

21   the total mix of information publicly available.  That means

22   that if you find a particular statement of fact or omission to

23   have been untruthful or misleading, before you can find that

24   statement or omission to be material, you must also find that

25   the statement or omission was one that would have mattered to a

reasonable investor in making their decision.

          In considering whether a statement or omission was
material, let me caution you that it is not a defense if the
material misrepresentation or omission would not have deceived
a person of ordinary intelligence.  In addition, a written
disclaimer cannot render any misrepresentation, including any
oral misrepresentation, immaterial as a matter of law.  Once
you find that the offense involved the making of material
misrepresentations or omissions of material facts, it does not
matter whether any of the victims involved were careless,
gullible, or even negligent, or that they might have uncovered
the scheme on their own had they probed more deeply, because
the law protects the gullible and unsophisticated as well as
the experienced investor.

          Nor does it matter whether the alleged unlawful
conduct was or would have been successful, or whether the
defendant profited or would have profited as a result of the
alleged scheme.  Success is not an element of the offense.  If,
however, you find that the defendant expected to or did profit
from the alleged scheme, you may consider that in relation to
the element of intent, which I will discuss in a moment.

          The second element of the Title 15 securities fraud
charge in Count One relates to Mr. Milton's state of mind.  If
you find that the government has met its burden of proving the
first element—that is the element I just explained—the

Mae2Mil1                    Charge

government must then prove beyond a reasonable doubt that

Mr. Milton engaged in the scheme knowingly, willfully, and with

an intent to defraud.  To act knowingly means to act

intentionally, deliberately, and voluntarily, rather than by

mistake, accident, ignorance, or careless.  To act willfully

means to act voluntarily and with a wrongful purpose.

Whether Mr. Milton acted knowingly, willfully, and

with an intent to defraud is a question of fact for you to

determine, like any other fact question.  Direct proof of

knowledge and intent to deceive is not required.  Knowledge and

criminal intent may, like any other fact, be established by

circumstantial evidence.  What is referred to as drawing

inferences from circumstantial evidence is no different from

what people normally mean when they say, "use your common

sense."  Science has not yet devised a manner of looking into a

person's mind and knowing what that person is thinking.

However, you have before you evidence of certain actions and

statements by Mr. Milton.  The government contends that these

actions and statements show beyond a reasonable doubt

Mr. Milton's knowledge of the unlawful purposes of his actions.

On the other hand, Mr. Milton denies either that these acts and

statements occurred or that they show that he had such

knowledge, intent, and purpose.

It is for you to determine whether the government has

established beyond a reasonable doubt that Mr. Milton had such

Mae2Mil1                    Charge

1   knowledge, intent, and purpose.

2          Please note that if Mr. Milton honestly believed that

3   his statements and actions were proper and not in furtherance

4   of any unlawful scheme, then such good faith would be a

5   complete defense to all of the charges here.  An honest belief

6   in the truth of the representations made by a defendant is a

7   complete defense, however inaccurate the statements may turn

8   out to be.  Thus, by way of example, if Mr. Milton honestly

9   believed that his statements to investors were accurate and not

10  misleading, that would be a complete defense to the charge of

11  securities fraud, even if that belief ultimately proved to be

12  inaccurate.  However, the defendant does not bear the burden of

13  proving his good faith.  It remains at all times the

14  government's burden to prove, beyond a reasonable doubt, that

15  the defendant acted knowingly, willfully, and with an intent to

16  defraud.

17         With respect to Count One, the Title 15 securities

18  fraud charge, the third and final element that the government

19  must prove beyond a reasonable doubt is that Mr. Milton used,

20  or caused to be used, the mails or the instrumentalities of

21  interstate commerce in furtherance of the alleged scheme to

22  defraud.

23         The parties agree that this element has been met.

24         Count Two charges Mr. Milton with securities fraud

25  under Title 18 of the United States Code.  That law provides in

Mae2Mil1                    Charge

relevant part that a person is guilty of the crime of

securities fraud if he "knowingly executes, or attempts to

execute, a scheme or artifice to defraud any person in

connection with any . . . security of an issuer with a class of

securities registered under section 12 of the Securities

Exchange Act of 1934; or to obtain by, means of false or

fraudulent presentences, representations, or promises, any

money or property in connection with the purchase or sale of

any commodity for future delivery, or any option on a commodity

for future delivery, or any security of an issuer with a class

of securities registered under section 12 of the Securities

Exchange Act of 1934."

         To prove that the defendant committed this crime, the

government must prove each of the following elements beyond a

reasonable doubt:

         First, that the defendant executed a scheme or

artifice either (a) to defraud a person or (b) to obtain money

or property by means of materially false and fraudulent

pretenses, representations, or promises;

         Second, that the defendant knowingly and willfully

participated in the scheme or artifice; and

         Third, that the scheme to defraud was in connection

with the purchase or sale of stock in a company whose

securities were registered under section 12 of the Securities

Exchange Act of 1934 or was otherwise required to file reports

Mae2Mil1                    Charge

under that act.

As I instructed you earlier, a scheme or artifice to defraud is merely a plan to accomplish a fraudulent objective. A "scheme to defraud" is a pattern or course of conduct concerning a material matter designed to deceive a person. "Fraud" is a general term that embraces all efforts and means that individuals devise to deceive and take advantage of others.

I will instruct you on the meaning of "materially" or a "material fact" in this context in a few moments when I discuss Counts Three and Four.  You should apply that definition to Title 18 securities fraud in Count Two as well.

As I instructed you earlier, to act knowingly means to act intentionally, deliberately, and voluntarily, rather than by mistake, accident, ignorance, or carelessness.  To act willfully means to act voluntarily and with a wrongful purpose.

To prove specific intent to defraud, the government must prove that Mr. Milton intended to deceive the alleged victims and intended to harm them by depriving them of money or property.

With respect to the third element, as I instructed you with respect to Count One with respect to the third element, a scheme to defraud is connected to the purchase or sale of a security if you find that the alleged conduct coincided with a securities transaction.  It is not necessary for you to find

1   that the defendant actually purchased or sold securities.  As a

2   matter of law, the shares of Nikola and VectoIQ were securities

3   registered under section 12 of the Securities Exchange Act.

4          Counts Three and Four of the indictment charge

5   Mr. Milton with committing wire fraud, in violation of Title 18

6   of the United States Code Section 1343.  The law provides that

7   "whoever, having devised or intending to devise any scheme or

8   artifice to defraud, or for obtaining money or property by

9   means of false or fraudulent pretenses, representations, or

10  promises, transmits or causes to be transmitted by means of

11  wire, radio, or television communication in interstate or

12  foreign commerce, any writings, signs, signals, pictures, or

13  sounds for the purpose of executing such scheme or artifice,

14  [shall be guilty of a federal crime]."

15         In order to prove Mr. Milton guilty of wire fraud, the

16  government must establish beyond a reasonable doubt the

17  following elements of the crime of wire fraud:

18         First, that there was a scheme or artifice to defraud

19  the victims of money or property or to obtain money or property

20  by false or fraudulent pretenses, representations, or promises;

21  second, that the defendant knowingly and willfully participated

22  in the scheme or artifice to defraud with knowledge of its

23  fraudulent nature and with specific intent to defraud; and

24         Third, that in execution of the scheme or artifice,

25  the defendant used, or caused the use of, interstate wires.

Mae2Mill                      Charge

1          As I instructed you earlier, a scheme or artifice to

2     defraud is merely a plan to accomplish a fraudulent objective.

3     A "scheme to defraud" is a pattern or course of conduct

4     concerning a material matter designed to deceive a person.

5     "Fraud" is a general term that embraces all efforts and means

6     that individuals devise to deceive and take advantage of

7     others.

8          The wire fraud statute provides that it can be

9     satisfied by the existence of a scheme or artifice to defraud

10     the victim of money or property or to obtain money or property

11     by means of false or fraudulent pretenses, representations, or

12     promises.  A pretense, representation, statement, or document

13     is fraudulent if it was made falsely and with an intent to

14     deceive.  A representation, statement, claim, or document may

15     also be fraudulent if it contains half-truths or if it conceals

16     material facts in a manner that makes what is said or

17     represented deliberately misleading or deceptive.

18          The deception need not be premised on spoken or

19     written words alone.  The arrangement of words, or the

20     circumstances in which they are used, may convey the false and

21     deceptive appearance.  If there is deception, the manner in

22     which it is accomplished does not matter.

23          The element does not require that any particular

24     person actually relied on, or actually suffered damages as a

25     consequence of, any fraudulent representation or concealment of

1   facts.  Nor need you find that Mr. Milton profited from the

2   fraud.  It is enough that a false statement, or a statement

3   omitting material facts that made what was said deliberately

4   misleading, was made as part of a fraudulent scheme in the

5   expectation that it would be relied on.  You must concentrate

6   on whether there was such a scheme, not on the consequences of

7   the scheme.  Of course, proof concerning the accomplishment of

8   the goals of the scheme may be evidence of the existence of the

9   scheme itself.

10        In addition, the false or fraudulent representation

11   must relate to a material fact or matter.  A material fact is

12   one that would reasonably be expected to be of concern to a

13   reasonable and prudent person in making a decision.  That means

14   that, if you find a particular statement or representation

15   false you must determine whether that statement or

16   representation was one that a reasonable person would have

17   considered important in making his or her decision.  The same

18   principle applies to fraudulent half-truths or omissions, that

19   is, failures to disclose facts in a manner that makes what was

20   said or represented misleading or deceptive.  On this point, I

21   also note that contractual disclaimers of reliance on prior

22   misrepresentations do not render those misrepresentations

23   immaterial as a matter of law under the criminal wire fraud

24   statute.

25        A scheme to defraud need not be shown by direct

Mae2Mil1                    Charge

1    evidence, but may be established by all the circumstances and

2    facts in the case.

3            If you find beyond a reasonable doubt that a scheme to

4    defraud did exist, you next should consider the second element

5    of wire fraud.

6            The second element the government must prove beyond a

7    reasonable doubt under Counts Three and Four is that Mr. Milton

8    devised the scheme to defraud knowingly, willfully, and with

9    specific intent to defraud.

10           The words "devised" and "participated" are words that

11   you are familiar with and, therefore, I do not need to spend

12   much time defining them for you.  To "devise" a scheme to

13   defraud is to concoct or plan it.  To "participate" in a scheme

14   to defraud means to associate oneself with it with a view and

15   intent to toward making it succeed.

16           In order to satisfy this element, it is not necessary

17   for the government to establish that Mr. Milton originated the

18   scheme to defraud.  It is sufficient if you find that a scheme

19   to defraud existed, even if originated by another, and that

20   Mr. Milton, while aware of the scheme's existence, knowingly

21   participated in it.

22           It is also not required that Mr. Milton participated

23   in or had knowledge of all of the operations of the scheme.

24   The guilt of a particular defendant is not governed by the

25   extent of his or her participation.

Mae2Mil1                       Charge

1            As I have previously noted, before the defendant may

2      be convicted of the fraud charged here, he must also be shown

3      to have acted knowingly and willfully and with a specific

4      intent to defraud.

5            To act "knowingly" means to act voluntarily and

6      deliberately, and not because of ignorance, mistake, accident,

7      or carelessness.

8            To act "willfully" means to act voluntarily and with a

9      wrongful purpose.

10           Mr. Milton acted with specific intent to defraud if he

11     engaged or participated in the fraudulent scheme with some

12     realization of its fraudulent or deceptive character and with

13     an intention to be involved in the scheme to defraud and to

14     help it succeed with a purpose of causing harm to the victim.

15     The government need not prove that the intended victim or

16     victims was or were actually harmed; only that such harm was

17     contemplated.  Actors are presumed to intend the natural and

18     probable consequences of their actions.  So, when the necessary

19     result of the actor's scheme is to injure others, fraudulent

20     intent may be inferred from the scheme itself.  In addition,

21     the government need not prove that the intent to defraud was

22     the only intent of Mr. Milton.  A defendant may have the

23     required intent to defraud even if the defendant was motivated

24     by other lawful purposes as well.

25           The question of whether a person acted knowingly,

Mae2Mil1                    Charge

willfully, and with specific intent to defraud is a question of
fact for you to determine, like any other fact question.  This
question involves one's state of mind.  Direct proof of
knowledge and fraudulent intent is almost never available.  It
would be a rare case where it could be shown that a person
wrote or stated that, as of a given time in the past, he or she
committed an act with fraudulent intent.  Such proof is not
required.

The ultimate facts of knowledge and criminal intent
are subjective.  Such knowledge and intent may be established
by circumstantial evidence, based upon a person's outward
manifestations, words, conduct, acts, and all the surrounding
circumstances disclosed by the evidence and the rational or
logical inferences that may be drawn therefrom.  Circumstantial
evidence, if believed, is of no less value than direct
evidence.

What is referred to as drawing inferences from
circumstantial evidence is no different from what people
normally mean when they say, "use your common sense."  Using
your common sense means that, when you come to decide whether
the defendant possessed or lacked an intent to defraud, you
need not limit yourself to just what the defendant said, but
you may also look at what the defendant did and what others did
in relation to the defendant and, in general, everything that
occurred.

Mae2Mil1                    Charge

1           As a practical matter, then, in order to sustain the

2     charges against Mr. Milton, the government must establish

3     beyond a reasonable doubt that he knew that his conduct was

4     calculated to deceive and, nonetheless, he associated himself

5     with the alleged fraudulent conduct for the purpose of causing

6     some loss to another.

7           The third and final element that the government must

8     establish beyond a reasonable doubt to sustain its burden under

9     Counts Three and Four, the wire fraud charges, is that

10    interstate wires, for example, phone calls, e-mail

11    communications, text messages, bank wire transfers, or online

12    document filings were used in furtherance of the scheme to

13    defraud.

14          The parties agree that this element has been met.

15          (Continued own next page)

16

17

18

19

20

21

22

23

24

25

MAE5mil2                    Charge

1          THE COURT:  Good faith on the part of Mr. Milton is a

2    complete defense to each and every one of the charges in this

3    case.  If Mr. Milton, in good faith, believed in good faith

4    that he was acting properly even if he was mistaken in that

5    belief, and even if others were injured by his conduct, he

6    cannot be found guilty.  An honest mistake, or even

7    carelessness, does not rise to the level of criminal conduct.

8    By way of example, if Mr. Milton honestly believed that his

9    statements to investors were accurate and not misleading, that

10   would be a complete defense to the securities fraud charges

11   even if that belief ultimately proved to be inaccurate.  Let me

12   remind you that Mr. Milton has no burden to prove his good

13   faith.  Rather, the government must prove a bad faith and

14   intent to defraud beyond a reasonable doubt.  If the evidence

15   in this case leaves you with a reasonable doubt as to whether

16   Mr. Milton acted in bad faith or with an intent to defraud,

17   then you must find him not guilty.

18          In considering whether or not a defendant acted in

19   good faith, however, you are instructed that a belief by the

20   defendant, if such belief existed, that ultimately everything

21   would work out so that no investors would lose any money, does

22   not necessarily constitute good faith.  No amount of honest

23   belief on the part of a defendant that the scheme will

24   ultimately make a profit for the investors will excuse

25   fraudulent actions or false representations by him.

MAE5mil2                    Charge

1           With respect to any given count that you are

2     considering, the government, in addition to proving the

3     essential elements of that charge, must also prove that at

4     least one act in furtherance of the charge occurred in the

5     Southern District of New York.  This requirement is called

6     venue.  The Southern District of New York is the judicial

7     district that includes Manhattan and the Bronx, and

8     Westchester, which includes Mamaroneck, New York, and Orange

9     Counties, as well as several other countries not relevant to

10    this case.

11          The government does not have to prove that a completed

12    crime was committed within the Southern District of New York,

13    or that Mr. Milton was ever in the Southern District of New

14    York.  With respect to Counts One and Two, it is sufficient to

15    satisfy the venue requirement if any act in furtherance of the

16    crime charged occurred in this district.  The act itself need

17    not be a criminal act.  It could include, for example,

18    executing a securities trade within this district, or the

19    transmission of a communication or a wire in furtherance of the

20    scheme into or out of the district.  With respect to Counts

21    Three and Four, it is sufficient to satisfy the venue

22    requirement if the defendant caused any interstate wire such as

23    an e-mail, phone call, or television or Internet broadcast to

24    be transmitted into or out of the district.  The wire need not

25    itself be criminal, as long as it was transmitted or caused to

 1    be transmitted as part of the scheme.  And the act need not

 2    have been taken by Mr. Milton so long as the act was part of

 3    the crime that you find he committed.

 4         Unlike the elements of the offenses which must be

 5    proven beyond a reasonable doubt, the government is only

 6    required to prove venue by a preponderance of the evidence.  A

 7    preponderance of the evidence means that it is more probable

 8    than not that some act in furtherance of the crime you are

 9    considering occurred in this district.

10         Thus, with respect to each of the four counts, the

11    government has satisfied its venue obligations if you conclude

12    that it is more likely than not that any act in furtherance of

13    the crime charged occurred within this district, even if other

14    acts in furtherance of the crime charged occurred outside of

15    this district.  If you find that the government has failed to

16    prove this venue requirement, then you must acquit Mr. Milton

17    of this charge.

18         The indictment refers to various dates.  The

19    government does not need to prove than act occurred during a

20    specific time period or on a specific date.  I instruct you

21    that it does not matter if a specific event is alleged to have

22    occurred on or about a certain date or month but the testimony

23    indicates that in fact it was a different date or month.  The

24    law requires only a substantial similarity between the dates

25    alleged in the indictment and the dates established by the

MAE5mil2                    Charge

1    evidence.

2            You may not draw any inference, favorable or

3    unfavorable, towards the government or Mr. Milton from the fact

4    that any person other than Mr. Milton is not on trial here.

5    You also may not speculate as to the reasons why other persons

6    are not on trial.  Those matters are wholly outside your

7    concern and have no bearing on your function as jurors.

8            A defendant in a criminal case never has any duty to

9    testify or come forward with any evidence.  That is because, as

10   I have told you, the burden of proof beyond a reasonable doubt

11   remains on the government at all times and Mr. Milton is

12   presumed innocent.  In this case Mr. Milton did not testify.

13   Under our Constitution, a defendant has no obligation to

14   testify or to present any evidence because it is the

15   government's burden to prove the defendant guilty beyond a

16   reasonable doubt.  A defendant is never required to prove that

17   he is innocent.

18           You must not attach any significance to the fact that

19   Mr. Milton did not testify.  You may not draw adverse

20   inferences against Mr. Milton because he did not take the

21   witness stand.  You may not consider the decision not to

22   testify in any way in your deliberations in the jury room.

23   There are many reasons why an innocent person may choose not to

24   testify.

25           I will now tell you about one of Mr. Milton's theories

of defense.  It is important to keep in mind that by explaining

his defense, the burden remains on the government to prove each

charge beyond a reasonable doubt.  With respect to Counts Two

and Three, Mr. Milton contends that he did not intend to harm

the alleged victims by depriving them of money or property.

Therefore, he contends, he believed that people who purchased

Nikola stock during the relevant period were not defrauded.

Similarly, with respect to Count Four, Mr. Milton contends that

he did not intend to harm Peter Hicks by depriving him of money

or property.

Now for the evaluation of evidence.

You are to consider only the evidence in the case.

The evidence in this case is the sworn testimony of the

witnesses, the exhibits received in evidence, and the

stipulations to which the parties have agreed.  Anything you

may have seen or heard about this case outside the courtroom is

not evidence and must be entirely disregarded.

Exhibits which may have been marked for identification

but not received into evidence may not be considered by you as

evidence.  Only those exhibits received into evidence may be

considered as evidence.  It is for you alone to decide the

weight, if any, to give to the testimony and stipulations you

have heard and the exhibits you have seen.  Testimony that I

have excluded or stricken is not evidence and may not be

considered by you in rendering your verdict.

1          You are to consider as evidence -- you are not to

2     consider as evidence questions asked by the lawyers.  It is the

3     witness' answers that are evidence, not the questions.

4     Arguments or objections by the attorneys are not evidence

5     because the attorneys are not witnesses.  What they have said

6     to you in their opening statements and their summations is

7     intended to help you understand the evidence to reach your

8     verdict.  If, however, your recollection of the evidence

9     differs from the statements made by the attorneys in their

10     opening statements or summations, go with your recollection of

11     the evidence.

12          Finally, any statements or rulings that I may have

13     made do not constitute evidence.  Because you are the sole and

14     exclusive judges of the facts, I do not need to indicate any

15     opinion as to what the facts are or what the verdict should be.

16     The rulings I have made during the trial are not any indication

17     of my views.  Also, you should not draw any inference from the

18     fact that I may have, on occasion, asked certain questions of

19     witnesses.  Those questions were intended only to clarify or

20     expedite and are not an indication of my views of the evidence.

21     In short, if anything I have said or done seemed to you to

22     indicate an opinion on any matter you need to consider, you

23     must disregard it.

24          Now, there are two types of evidence that you may

25     properly use in reaching your verdict.  One type of evidence is

MAE5mil2                        Charge

called direct evidence.  One kind of direct evidence is a
witness' testimony about something they know by virtue of their
own senses -- something the witness has seen, felt, touched, or
heard.  Direct evidence may also be in the form of an exhibit.
The other type of evidence is circumstantial evidence.
Circumstantial evidence is evidence that tends to prove one
fact indirectly by proof of other facts.  Here is a simple
example of circumstantial evidence:

      Assume that when you came into the court house this
morning the sun was shining and it was a nice day.  Assume that
the courtroom blinds are drawn and that you cannot look
outside.  As you are sitting here, someone walks in with an
umbrella that is dripping wet.  Someone else -- somebody else
then walks in with a raincoat that is also dripping wet.  Now,
you cannot look outside the courtroom and you cannot see
whether or not it is raining so you have no direct evidence of
that fact, but on the combination of the facts that I have
asked you to assume, it would be reasonable and logical for you
to conclude that between the time you arrived at the court
house and the time that these people walked in it had started
to rain.

      That is all there is to circumstantial evidence.  You
infer, on the basis of reason and experience and common sense
from an established fact, the existence or the non-existence of
some other fact.

MAE5mil2                          Charge

Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.  Circumstantial evidence is of no less value than direct evidence.  You are to consider both types of evidence.  The law makes no distinction between the two, but simply requires that before convicting a defendant you, the jury, must be satisfied of the defendant's guilt beyond a reasonable doubt from all of the evidence in the case.

It is the duty of the attorney for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not admissible.  Counsel also have the right and duty to ask the Court to make rulings of law.  All those questions of law must be decided by me.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence or asked for a conference outside of the hearing of the jury, or asked the Court for a ruling on the law.

As I have already indicated, my rulings on the admissibility of evidence did not indicate any opinion about the weight or effect of such evidence, or the lack of evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  If, however, I sustained an objection to any evidence, or if I ordered evidence to be stricken, that evidence must be entirely ignored.

I have used the term "infer" and the lawyers in their

arguments have asked you to draw inferences.  When you draw an
inference you conclude from one or more established fact that
another fact exists and you do so on the basis of your reason,
experience, and common sense.  The process of drawing
inferences from facts in evidence is not a matter of guesswork,
suspicion, or speculation.  An inference is a reasoned, logical
deduction or conclusion that you, the jury, may draw but are
not required to draw from the facts which have been established
either by direct or circumstantial evidence.  In considering
inferences, you should use your common sense and draw from the
facts which you find to be proven whatever reasonable
inferences you find to be justified in light of your
experience.

You have heard evidence that Nikola had lawyers.  A
lawyer's involvement with an individual or entity does not,
itself, constitute a defense to any charge in this case.  The
defense has not claimed that the defendant's conduct was lawful
because he acted on the advice of a lawyer.

Now for the important subject of evaluating testimony.
How do you evaluate the credibility or believability of the
witnesses?  The answer is that you use your plain, common
sense.  There is no magic formula by which you can evaluate
testimony.  You should use the same tests for truthfulness that
you would use in determining matters of importance in your
everyday lives.  You should ask yourselves, did the witness

impress you as honest, open, and candid?  Or was the witness

evasive and edgy, as if hiding something?  How did he or she

appear, that is, his or her bearing, behavior, manner and

appearance while testifying?  How responsive was the witness to

the questions asked on direct examination and on

cross-examination?  You should consider the opportunity the

witness had to see, hear, and know about the things about which

he or she testified, the accuracy of his or her memory, his or

her candor or lack of candor, his or her intelligence, the

reasonableness and probability of his or her testimony, its

consistency or lack of consistency with other credible

evidence, and its corroboration or lack of corroboration by

other credible evidence.

        In short, in deciding credibility, you should size the

witness up in light of his or her demeanor, the explanations

given, his or her interest in the case, and all the other

evidence in the case.  Always remember to use your common

sense, good judgment, and life experience.

        Few people recall every detail of every event

precisely the same way.  A witness may be inaccurate,

contradictory, or even untruthful in some respects and yet

entirely believable and truthful in other respects.  It is for

you to determine whether such inconsistencies are significant

or inconsequential.

        If you find that a witness intentionally -- if you

MAE5mil2                          Charge

find that a witness is intentionally telling a falsehood that
is always a matter of importance you should weigh carefully.
If you find that any witness has willfully testified falsely as
to any material fact, that is, as to an important matter, the
law permits you to disregard completely the entire testimony of
that witness upon the principle that one who testifies falsely
about one material fact is likely to testify falsely about
everything.  However, the law does not require you to consider
such a witness as totally unbelievable.  You may accept so much
of his or her testimony as you deem true and disregard what you
feel is false.

          You are not required to accept testimony even if the
testimony is uncontradicted and the witness' testimony is not
challenged.  You may decide because of the witness' bearing or
demeanor, or because of the inherent improbability of the
testimony, or for other reasons, that the testimony is not
worthy of belief.  On the other hand, you may find, because of
a witness' bearing and demeanor and based upon your
consideration of all the other evidence in the case, that that
witness is truthful.

          By the processes I have just described, you, as the
sole judges of the facts, decide which of the witnesses you
will believe, what portions of their testimony you accept, and
what weight you will give to it.

          In deciding whether to believe a witness, you should

MAE5mil2                    Charge

also specifically note any evidence of bias, hostility, or

affection that the witness may have towards one of the parties.

Likewise, you should consider evidence of any other interest or

motive that the witness may have in cooperating or not

cooperating with a particular party.  If you find any such

bias, hostility, affection, interest, or motive, you must then

consider whether or not it affected or colored the witness'

testimony.

        You should also take into account any evidence that a

witness may benefit or suffer in some way from the outcome of

the case.  Such interest in the outcome may create a motive to

testify falsely and may sway a witness to testify in a way that

advances his or her own interests.  Therefore, if you find that

any witness whose testimony you were considering may have an

interest in the outcome of this trial, then you should bear

that factor in mind when evaluating the credibility of his or

her testimony and accept it with great care.

        Keep in mind, though, that it does not automatically

follow that testimony given by an interested witness is to be

disbelieved.  There are many people who, no matter what their

interest in the outcome of the case may be, would not testify

falsely.  It is for you to decide, based on your own

perceptions and common sense, to what extent, if at all, the

witness' bias or interest has affected his or her testimony.

You are not required to disbelieve an interested witness.  You

MAE5mil2                    Charge

may accept so much of his or her testimony as you deem reliable

and reject as much as you deem unworthy of acceptance.

There are people whose names you have heard during the

course of this trial that did not appear in court to testify.

I instruct you that each party had an equal opportunity or lack

of opportunity to call any of these witnesses.  Therefore, you

should not draw any inferences or reach any conclusions as to

what they would have testified to had they been called.  Their

absence should not affect your judgment in any way.  You should

remember my instruction, however, that the law does not impose

on the defendant in a criminal case the burden or duty of

calling any witnesses or producing any evidence, and that the

burden always rests with the government to prove the

defendant's guilt beyond a reasonable doubt.

The fact that one party called more witnesses and

introduced more evidence than the other does not mean that you

should find the facts in favor of the side offering the most

witnesses.  The burden of proof is always on the government.

Mr. Milton is not required to call any witnesses or offer any

evidence since he is presumed to be innocent.

In this case, I have permitted certain witnesses to

express their opinions about matters that are in issue.  A

witness may be permitted to testify on an opinion about those

matters about which he or she has special knowledge, skill,

experience, and training.  Such testimony is presented to you

MAE5mil2                    Charge

on the theory that someone who is experienced and knowledgeable

in the field can assist you in understanding the evidence or in

reaching an independent decision on the facts.

          In weighing this opinion testimony, you may consider

the witness' qualifications, his or her opinions, the reasons

for testifying, as well as all of the other considerations that

ordinarily apply when you are deciding whether or not to

believe a witness' testimony.  You may give the opinion

testimony whatever weight, if any, you find it deserves in

light of all of the evidence of the case.  You should not,

however, accept opinion testimony merely because I allowed the

witness to testify concerning his or her opinion.  Nor should

you substitute it for your own reason, judgment, and common

sense.  The determination of the facts in this case rest solely

with you.  As with the testimony of other witnesses, you may

decide to accept all, some, or none of the testimony of any

expert witness.

          You have heard the testimony of Special Agent Penland,

a law enforcement witness who testified during this trial about

certain charts and documents.  The fact that a witness is or

was employed by the government does not mean that her testimony

deserves more or less consideration or greater weight than that

of any other witness.  At the same time, it is legitimate for

defense counsel to try to attack the credibility of a law

enforcement witness on the grounds that her testimony may be

MAE5mil2                    Charge

colored by a personal or professional interest in the outcome
of the case.  It is your decision, after reviewing all the
evidence, whether to accept or reject the testimony of the
witness and to give that testimony whatever weight you find it
deserves.

         You have heard evidence that prior to appearing in
court witnesses have discussed the facts of the case and their
testimony with attorneys.  Although you may consider this fact
when you are evaluating a witness' credibility, I should tell
you that there is nothing improper or unusual about a witness
meeting with lawyers before testifying so that the witness can
be aware of the subjects he or she will be questioned about and
can focus on those subjects and have the opportunity to prepare
or review relevant exhibits before being questioned about them.
Such consultation helps conserve your time and the Court's
time.  In fact, it would be unusual for a lawyer to call a
witness without such consultation.

         The parties presented exhibits in the form of charts
and summaries.  As you will recall, some of the charts and
summaries were not admitted in evidence but were shown to you
as aids to make other evidence more meaningful and to help you
in considering that evidence.  Others were admitted into
evidence as exhibits.  I admitted these charts and summaries in
place of or in addition to the underlying documents that they
represent in order to save time and avoid unnecessary

1    inconvenience.  They are no better than the testimony or the

2    documents upon which they are based.  Therefore, you are to

3    give no greater consideration to these charts or summaries than

4    you would give to the evidence upon which they are based.  It

5    is for you to decide whether they correctly present the

6    information contained in the testimony and in the exhibits upon

7    which they were based.

8            An audio recording has been admitted into evidence in

9    this case.  This evidence was lawfully obtained by the

10   government and properly admitted in this case.  Whether you

11   approve or disapprove of the government's use of the recording

12   of this conversation may not enter into your deliberations.  I

13   instruct you that the government's use of this evidence is

14   entirely lawful.

15           You have heard, in the form of stipulations of fact --

16   you have heard evidence, rather, in the form of stipulations of

17   fact.  A stipulation of fact is an agreement between the

18   parties that a certain fact is true.  You must regard such

19   agreed upon facts as true.

20           You have heard testimony that the defendant made

21   statements in which he claimed that his conduct was consistent

22   with innocence and not with guilt.  The government claims that

23   these statements in which the defendant attempted to exculpate

24   himself are false.  If you find that the defendant gave a false

25   statement in order to divert suspicion from himself, you may

MAE5mil2                     Charge

infer that the defendant believed that he was guilty.  You may

not, however, infer on the basis of this alone that the

defendant is, in fact, guilty of the crimes for which he is

charged.

Whether or not the evidence as to a defendant's

statements shows that the defendant believed that he was

guilty, and the significance, if any, to be attached to any

such evidence are matters for you, the jury, to decide.

Under your oath as jurors, you are to evaluate the

evidence calmly and objectively, without sympathy or prejudice.

You are to be completely fair and impartial.  You are to be

guided solely by the evidence in this case and the crucial

bottom line question that you must ask yourselves as you sift

through the evidence is has the government proven the elements

of the crimes charged beyond a reasonable doubt.

It would be improper for you to consider, in deciding

the facts of the case, any personal feelings you may have about

the race, religion, national origin, sex, disability, or age of

any party or witness or any other such irrelevant factor.  It

would be equally improper for you to allow any feelings you

might have about the nature of the crimes charged to interfere

with your decision-making process.  All parties are entitled to

the same fair trial at your hands.  They stand equal before the

law and are to be dealt with as equals in this court.  If you

let fear or prejudice, or bias, or sympathy interfere with your

MAE5mil2                    Charge

1    thinking, then there is a risk that you will not arrive at a

2    true and just verdict.

3           If you have a reasonable doubt as to Mr. Milton's

4    guilt with respect to a particular count, you should not

5    hesitate to render a verdict of acquittal on that charge.  But

6    on the other hand, if you should find that the government has

7    met its burden of proving Mr. Milton's guilt beyond a

8    reasonable doubt with respect to any particular count, you

9    should not hesitate because of sympathy or any other reason to

10   render a verdict of guilty on that count.

11          In determining whether the government has proven the

12   charges beyond a reasonable doubt, you should not consider the

13   question of possible punishment in the event that you are to

14   find Mr. Milton guilty as charged.  The duty of imposing a

15   sentence rests exclusively upon the Court.  Your function is to

16   weigh the evidence in the case and to determine whether or not

17   Mr. Milton is guilty beyond a reasonable doubt, solely upon the

18   basis of such evidence or lack of such evidence.  Therefore, I

19   instruct you that you cannot allow the consideration of the

20   punishment which may be imposed upon Mr. Milton, if he is

21   convicted, to influence your verdict in any way or in any sense

22   enter into your deliberations.

23          Now, with respect to deliberations, you will now

24   retire to decide the case.  It is your duty, as jurors, to

25   consult with one another and to deliberate with a view to

1    reaching an agreement.  Each of you must decide the case for

2    yourself but you should do so only after consideration of the

3    case with your fellow jurors.  Your verdict, and the answers to

4    each question on the verdict form, must be unanimous.  Discuss

5    and weigh your respective opinions dispassionately, without

6    sympathy, prejudice, or favor toward either party, and adopt

7    that conclusion which in your good conscience appears to be in

8    accordance with the truth.

9           As you deliberate, please listen to the opinions of

10   your fellow jurors and ask for an opportunity to express your

11   own views.  Every juror should be heard.  No one juror should

12   hold center stage in the jury room and no one juror should

13   control or monopolize the deliberations.  You should all listen

14   to one another with courtesy and respect.  If, after stating

15   your own view, and if after listening to your fellow jurors you

16   become convinced that your view is wrong, do not hesitate

17   because of stubbornness or pride to change your view.  On the

18   other hand, do not surrender your honest convictions and

19   beliefs concerning the weight or effect of the evidence solely

20   because of the opinions of your fellow jurors, or because you

21   are outnumbered, or for the mere purpose of returning a

22   verdict.  Your final vote must reflect your conscientious

23   belief as to how the issues should be decided and your verdict

24   must be unanimous.

25          You are not to discuss the case until all jurors are

MAE5mil2                    Charge

present.  Nine, or 10, or even 11 jurors together is only a
gathering of individuals.  Only when all jurors are present do
you constitute a jury and only then may you deliberate.

          If any of you took notes during the course of the
trial, you should not show your notes or discuss your notes
with any other juror during your deliberations.  Any notes that
you have taken are to be used solely to assist you and are not
a substitute for the transcript of the testimony which has been
taken down verbatim by the court reporters, or the exhibits
themselves.  The fact that a particular juror has taken notes
entitles that juror's views to no greater weight than those of
any other juror.  And please remember that if notes were taken
during the lawyers' arguments, the lawyers' arguments are not
evidence.

          The exhibits will be sent to you in the jury room.  If
you want any of the testimony read back, that can be arranged.
Please appreciate that it is not always easy to locate the
testimony that you might want, so be as specific as you
possibly can as to what witness and what portion of that
witness' testimony you would like to hear.

          Any communication with the Court should be made in
writing, signed by your foreperson, and given to the court
security officer who will be outside the jury room door while
you deliberate.  I will respond to any questions or requests
you have as promptly as possible either in writing or by having

MAE5mil2                     Charge

you return to the courtroom so I can speak with you in person.
In any event, do not tell me or anyone else how the jury stands
on any issue until after a unanimous verdict is reached so do
not ever indicate, in a note or otherwise, what the vote is or
which way the majority is leaning or anything like that.

          Your first task when you retire to deliberate is to
select, by your own vote, one of you to sit as your foreperson.
The foreperson does not have any more power or authority than
any other juror and his or her vote or opinion does not count
for any more than any other juror's vote or opinion.  The
foreperson is merely your spokesperson to the Court.  He or she
will send out any notes.  When you have reached a unanimous
verdict, you should send a note, signed by the foreperson, and
the note should say, "The jury has reached a unanimous
verdict."  You should not indicate how you decided the case.
You will then return to open court with the foreperson who will
announce the verdict on behalf of the jury.

          The foreperson will have a verdict form on which to
record your verdict.  It is a list of questions that you must
resolve based on the evidence and the instructions I have given
you.  When the foreperson has completed the form, he or she
must sign his or her name and the form will be marked as a
Court exhibit.

          The most important part of this case, members of the
Jury, is the part that you, as jurors, are about to play as you

MAE5mil2                    Charge

1    deliberate on the issues of fact.  It is for you, and you

2    alone, to decide whether the government has proven beyond a

3    reasonable doubt each of the essential elements of the crimes

4    with which Mr. Milton is charged.  If the government has

5    succeeded on a particular count, your verdict should be guilty

6    as to that count.  If it has failed, your verdict should be not

7    guilty.  I know you will try the issues that have been

8    presented to you according to the oath that you have taken as

9    jurors.  In that oath you promised that you would well and

10   truly try the issues in this case and render a true verdict

11   according to the law and evidence, impartially and fairly,

12   without prejudice or sympathy.  Your function is to weigh the

13   evidence in the case and determine whether the government has

14   proved beyond a reasonable doubt Mr. Milton's guilt of the

15   crimes charged in the indictment.

16         As I previously stated, your verdict must be

17   unanimous.  Again, if at any time you are not in agreement, you

18   are not to reveal the standing of the jurors, that is, the

19   split of the vote to anyone, including me, at any time during

20   your deliberations.

21         At this time the regular jurors will begin their

22   deliberations in the case.  Nevertheless, the alternate jurors

23   are not quite excused.  While the jury conducts its

24   deliberations, you do not have to be in court but you should

25   give Ms. Rivera your phone numbers where you can be reached

MAE5mil2                    Charge

because it is possible that one or more of you could be needed

to deliberate if a regular juror is unable to continue.

Ms. Rivera will call you if deliberations are

completed without our needing you so that you will know that

you are completely finished.  Between now and then you must

continue to observe all the restrictions I have instructed you

on throughout the trial.  That is, you must not discuss this

case with anyone, including your fellow alternate jurors, the

regular jurors, other people involved in this trial, members of

your family, friends, co-workers, or anyone else.  You may not

communicate with anyone about the case on your cell phone,

through e-mail, text messaging, or by way of any other social

networking websites including Facebook and LinkedIn.  Do not

speak at all with any of the parties, the witnesses, or the

attorneys.  Do not permit anyone to discuss the case with you.

Do not friend or follow one another or any participant in this

trial on Facebook, Twitter, LinkedIn, or any other social

networking website.  You may not remain in the presence of

anyone discussing the case.  If anyone approaches you and tries

to talk to you about the case, please report that to me,

through Ms. Rivera, immediately.

Do not listen to or watch or read any news reports

concerning the trial if there were to be any.  Do not any

research on the Internet or otherwise; and do not visit any

places mentioned during the trial or conduct any kind of

MAE5mil2                    Charge

investigation on your own including on social media.  Should
you be asked to participate in reaching the verdict in this
case, the only information you will be allowed to consider in
deciding this case is what you learned in this courtroom during
the trial.

            To the alternate jurors, I am sorry that you will
probably miss the experience of deliberating with the jury but
the law provides for a jury of 12 persons in this case.  So,
before the rest of the jury retires into the jury room, if you
have any clothing or objects there, you will be asked to pick
them up and withdraw them before the deliberations start.

            With that, I need to speak with the lawyers at side
bar for just a moment, ladies and gentlemen.

            (Continued next page)

MAE5mil2                    Charge

1            (At side bar)

2            MR. CARUSO:  Your Honor, under Rule 30(d) at this time

3    we renew all of our objections and requests with respect to the

4    jury charge which we previously made in writing and orally at

5    the charge conference.  I assume the Court is going to adhere

6    to the charge as given, but I would make the motion or

7    application.

8            MR. PODOLSKY:  We object and stand by our position

9    that we gave previously.

10           THE COURT:  I will stand by the rulings that I have

11   made.

12           Let me ask the parties, did I misread or misstate

13   anything in the charge?

14           MR. CARUSO:  No.

15           MR. PODOLSKY:  No, your Honor.

16           MR. MUKASEY:  You did not.

17           I would only ask that you remind them that there is no

18   5:00 Friday deadline and the Court is available Monday morning.

19           THE COURT:  I will have several additional

20   instructions for them.

21           MR. MUKASEY:  Thank you.

22           MR. CARUSO:  And also now that I heard it, the

23   instruction about not investigating the case on your own or

24   Googling was addressed under the heading of alternate jurors,

25   so perhaps your Honor might just say what I just said about not

MAE5mil2                         Charge

1   looking at anything outside the evidence applies to everyone.

2   I just.

3              MR. BONDI:  Including the alternates.

4              MR. CARUSO:  It kind of hit me when I heard it.  Thank

5   you.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MAE5mil2                    Charge

1            (In open court)

2            THE COURT:  Ladies and gentlemen, just a couple of

3   other things before we let you go.  First of all, as I believe

4   I told you yesterday, once you begin deliberating your schedule

5   is in your hands.  You may continue to stay until 2:30, or if

6   you wish to stay later you can stay later.  If your

7   deliberations continue into next week, if you want to come in

8   earlier than 9:30 you are free to come in earlier than 9:30 and

9   stay later than 2:30.  It will be entirely in your hands so

10  that you let us know so that we can be available in the court

11  house during the time that you are here.

12           Obviously the instructions that I gave the alternate

13  jurors about not investigating or doing any Googling, etc.,

14  that applies with equal measure to the 12 other jurors.

15           We will be sending in the exhibits after you have gone

16  into the jury room.  It will require you to download it from a

17  hard drive so that you can review it.  I am fairly certain that

18  it should be easy for you folks.  It might not be easy for me

19  but I am sure that you will be able to figure it out.

20           If at any point you do have a question for the Court,

21  I do give the lawyers an hour for lunch so if you send a note

22  out between 12:30 and 1:30, it may take us a little longer to

23  get back to you.  But, if you send a note at some other time,

24  but please understand that any note that you send out I will

25  promptly gather the lawyers and get you an answer just as soon

MAE5mil2                              Charge

1    as we can.  OK?  Can we have the court security officer please

2    step forward?

3              (Marshal sworn)

4              THE COURT:  Ladies and gentlemen, you may now discuss

5    the case.

6              (Whereupon, at 10:42 a.m. the jury retired to

7    deliberate)

8              THE COURT:  You can be seated.

9              So, as I indicated yesterday, what I told the jury

10   about taking a little longer during the lunch hour is a lie and

11   so you should all be available, make sure that Ms. Rivera and

12   Ms. Londono Pardo have your cell phones so that we can call you

13   and you can be here in five minutes in the event we have any

14   note, period.

15             (Recess pending verdict)

16             (Continued next page)

17

18

19

20

21

22

23

24

25

Mae2Mil3

1          (Jury not present; 12:15 p.m.)

2          THE COURT:  Good afternoon, everyone.  We have

3    received a note.  I believe you have been provided copies.

4          I note that Mr. Milton is not here or Mr. Mukasey.

5    Should we wait?

6          MR. CARUSO:  Just wait for Mr. Mukasey.  I don't know

7    if we have summoned --

8          MS. YOUNG:  I have.  He is on his way.

9          MR. BONDI:  Both are on their way, your Honor.  I

10    apologize.  They should be here any second, if we could wait a

11    little bit.

12          THE COURT:  Obviously we will wait, but you should

13    start thinking about -- I'm not quite sure whether there was

14    one business model or several business models.

15          MS. ESTES:  I think there was testimony about multiple

16    ones, about multiple versions of the hydrogen business model.

17          THE COURT:  About?

18          MR. BONDI:  I was going to say, I think it is a

19    reference to the April 6, 2020 analyst report, which the answer

20    will be 2.47.

21          MS. ESTES:  I think it doesn't say anything about a

22    particular one, and there was testimony about one in June where

23    the cost was 8.68, so . . .

24          THE COURT:  Right.  So we will wait for Mr. Milton to

25    get here.

Mae2Mil3

 1          (Pause)

 2          MR. MUKASEY:  Judge, we understand Mr. Milton will be

 3   here within five, seven minutes.  I also think we probably

 4   could waive it, but if you let me reach out to him real

 5   quick --

 6          THE COURT:  No, I will wait for Mr. Milton.

 7          MR. MUKASEY:  All right.  Thanks.

 8          THE COURT:  But you might want to confer about how you

 9   want to respond to this.

10          MR. MUKASEY:  We will discuss it and then run it by

11   you guys.

12          (Pause)

13          THE COURT:  Mr. Milton is here.  Why don't we go on

14   the record.

15          Okay, folks, so we have received a note.  It's been

16   marked Court Exhibit 1.  The parties have a copy.  It reads as

17   follows:  "Cost to produce hydrogen in business model," and it

18   is signed by the foreperson, Juror No. 1, Elyse Stringer.

19          Do the parties have any suggestion as to how we might

20   answer this question?

21          MR. BONDI:  Yes.

22          THE COURT:  Okay.

23          MR. PODOLSKY:  Judge, I think from our perspective

24   it's a little bit hard to know how to respond to this.  It's

25   not actually a question.  It just says, "Cost to produce

Mae2Mil3

1    hydrogen in business model."  We could, I suppose, direct the

2    jury to the particular exhibits that refer, that contain

3    various business models as one option.  I think before we

4    embark on some hunt, though, through thousands of pages of

5    transcripts, not really knowing what the jury is looking for --

6              THE COURT:  They didn't ask for testimony.

7              MR. PODOLSKY:  I agree with that, your Honor.

8              THE COURT:  And just so the parties are aware of my

9    philosophy when it comes to answering juror questions, that I

10   answer the juror question and nothing more.  So my

11   recommendation would be to direct them to particular exhibits

12   and to ask whether there is any other information that they

13   want concerning the exhibits or the issue.

14             MR. MUKASEY:  That's fine, and we will start putting

15   together quickly a list of exhibits, we will compare it to the

16   government's suggestions.

17             THE COURT:  Okay.

18             MR. PODOLSKY:  That's fine.

19             MR. MUKASEY:  Thanks.

20             (Pause)

21             MS. ESTES:  Your Honor, we have conferred.

22   Unfortunately, I don't think we have an agreement on this one,

23   so I think we will have to take it up with your Honor.

24             THE COURT:  Okay.  First of all, what is the universe

25   of exhibits that we are talking about.

Mae2Mil3

1          MS. ESTES:  So the government has two proposed

2     exhibits and I think one the parties do agree on, and that's

3     the analyst day presentation of Nikola, which has a model on

4     page 25 of the presentation.

5          So that is Government Exhibit 281.

6          THE COURT:  Page 25?

7          MS. ESTES:  Page 25.

8          Do you want to pull it up?

9          MR. MUKASEY:  Judge, we actually, obviously, based our

10    whole defense on the model.  So we think that putting in

11    everything that refers to the hydrogen model is important, and

12    we have identified --

13         THE COURT:  Remember what I said not five minutes ago.

14    My philosophy when it comes to answering juror notes is to

15    answer the note.  Your defense is of no particular concern of

16    mine right now.

17         MR. MUKASEY:  Okay, but it says "cost to produce

18    hydrogen in business model."  So we have tried to find those

19    exhibits that referred to the cost to produce hydrogen in

20    business model separate and apart from our defense.  We are

21    trying to be as literal as possible.

22         MS. ESTES:  And, your Honor, I think what we disagree

23    with is they have proposed exhibits that we don't think

24    actually refer to business model.

25         I will start with what -- I think this one we agree

Mae2Mil3

1   on, that this page refers to the business model.

2              THE COURT:  Mine isn't on.

3              (Pause)

4              THE COURT:  Okay.  This is Government Exhibit 281.

5              MS. ESTES:  This is 281.

6              THE COURT:  Okay.  And this is what?

7              MS. ESTES:  This is page 25, and there it is Hydrogen

8   Station Unit Economics is the header of the page, and then it

9   lists out how they calculate the cost to produce hydrogen

10  there.

11             THE COURT:  Okay.

12             MS. ESTES:  And then the next one the government would

13  propose would be 250-A, which is this model that Dale Prows

14  testified about.  He testified how they were revising the model

15  that summer.  So this was a model where they list out the

16  regular model there in that second column, base station for

17  financial model, and then the hydrogen team redid the model and

18  came up with 8.68 there in the middle.  And then on the right

19  is a model for Liquifaction, 4.24.

20             THE COURT:  Okay.

21             MS. ESTES:  There is a cover e-mail that goes along

22  with it that has the date.  We could include that or not.  That

23  would be Government Exhibit 250.

24             MR. MUKASEY:  That's fine.

25             THE COURT:  250 and 250-A.  So there is no

Mae2Mil3

1    disagreement as to those two, Mr. Mukasey?

2              MR. MUKASEY:  Correct.

3              THE COURT:  Now, what do you guys want to put in?

4              MS. YOUNG:  So first, DX 1742 is the same analyst day

5    presentation that is in GX 281, but it was attached to the 8K

6    and filed with the SEC.

7              THE COURT:  Can I see it?  And this is Defense Exhibit

8    which number?

9              MS. YOUNG:  1742.

10             MS. ESTES:  It is 1742.  I mean it is duplicative of

11   281.

12             THE COURT:  Okay.

13             MS. ESTES:  And it adds that it is with an SEC filing,

14   so I don't know that that's necessary, but -- if you go to the

15   first page.

16             THE COURT:  So it's 1742, page what?

17             MS. YOUNG:  25.

18             THE COURT:  Okay.  I will include this.  Next.

19             MS. YOUNG:  So the next one is DX 35 and 34 is the

20   cover e-mail.  And at the bottom, there is a -- this is a

21   worksheet that's titled "Revenue Model Assumptions."

22             THE COURT:  I don't see that.

23             MS. YOUNG:  There it is, and row 38.

24             MS. ESTES:  Your Honor, our issue with this one is

25   that we think it would be improper to direct the jury to any

Mae2Mil3

1   particular line in this.  There are many tabs on this

2   spreadsheet.  They were actually toggling -- they were modeling

3   it for different places.  So, for instance, if you go over on

4   the tabs, there is a tab for a Phoenix station, there is a tab

5   for a Van Nuys station, and the costs differ in all of the

6   tabs.  So I think it would be proper to either provide them

7   nothing here because it is confusing, there is many different

8   tabs, or at the very least provide them the whole thing but not

9   point them to a particular part of this model that the defense

10  thinks is helpful to them.

11          THE COURT:  I will include this, as well.  What about

12  the cover e-mail.

13          MS. ESTES:  We are fine with the cover e-mail.

14          THE COURT:  So Defense Exhibits 34 and 35.

15          Anything else?

16          MS. YOUNG:  Yes, your Honor, DX 210, page 5 please.

17          MS. ESTES:  Your Honor, this is not the business

18  model.  There was testimony about this from Dale Prows.  This

19  is where, in the summer of 2020, because they weren't getting

20  what they needed from NEL, their business partner, they went to

21  other potential companies that might partner with them on

22  electrolyzers and asked for RPs.  So this is what various

23  different companies said they could possibly do for Nikola if

24  they built the electrolyzers.  It also has various assumptions

25  built in from those different companies.  It is certainly not

Mae2Mil3

1   Nikola's business model.  This is provided by -- you can see

2   the companies at the top.  Hytron, Cummins, plug Power, NEL,

3   Siemens, ThyssenKrupp.  So these are models from six different

4   companies.  This is not responsive to the note.

5           THE COURT:  I am not including this exhibit.

6           Next?

7           MS. YOUNG:  DX 1298.

8           MS. ESTES:  Your Honor, this is a due diligence

9   document which is why we object to it.  It's not a model.  It's

10  from 2019, so well before the charged period here, and it is

11  not a model.  It is a due diligence response to a potential

12  private investor.

13          MR. MUKASEY:  It reflects the model.

14          MS. YOUNG:  It reflects the model and was in place as

15  of April '19 which influenced his state of mind, obviously, but

16  it was the model of the company as of that date.

17          THE COURT:  This is in evidence, right?

18          MS. YOUNG:  Yes.

19          THE COURT:  I will include 1298.

20          MS. ESTES:  Your Honor, one thing on this, this is a

21  year before the statement here and the April 2020 model that we

22  have agreed to I think is what would more accurately reflect

23  what Nikola's actually doing in 2020.  So I don't know that a

24  document from a year ahead of time, a due diligence response,

25  is actually going to be helpful to the jury or probative of

Mae2Mil3

1    what Mr. Milton was thinking in 2020 when he is making

2    statements about the cost to produce hydrogen.  And this in

3    particular is also on electricity cost.  It's not on hydrogen

4    more generally.  It is specific to electricity.

5              THE COURT:  I don't understand the distinction.

6              MS. ESTES:  Well, the hydrogen --

7              THE COURT:  I understand the distinction between

8    electricity and hydrogen, but isn't this part of their hydrogen

9    model?

10             MS. ESTES:  Electricity cost was one assumption in the

11   hydrogen model.  So this is an explanation in 2019—a year

12   before Mr. Milton's statements—about what they are thinking as

13   far as electricity cost, a single assumption in the model that

14   they use.  So it is not the model.  These are electricity cost

15   assumptions and what they are saying about this.  And if you go

16   down and look through it, they are talking about how they plan

17   to get electricity.  Like these are things the jury has not

18   asked for.  They are not asking for electricity cost rates or

19   who they are talking to for electricity, and they can certainly

20   ask for that if they want it.  This is -- you can see right

21   here there is a PPA pricing index about wind prices.

22             THE COURT:  I will include it.  The jury can determine

23   whether or not it is useful to them.

24             MS. YOUNG:  The next one is DX 1601, page 5.

25             MS. ESTES:  Your Honor, this is the same thing.  These

Mae2Mil3

1    are due diligence responses.  Can we go to the first page of

2    it?  I think this may be from even earlier.

3              MS. YOUNG:  It is VectoIQ.

4              MR. MUKASEY:  Yeah, it is VectoIQ, and it specifically

5    says it is the model.

6              THE COURT:  I'll include it.

7              MS. YOUNG:  The next one is DX 1604, page 5.

8              MS. ESTES:  Your Honor, these are questions from 2018,

9    so now we are two years out from the charged conduct.

10             THE COURT:  It's in evidence, but why should I not

11   include it?  Besides the --

12             MS. ESTES:  Again, we just don't think this is

13   responsive.  This is all about electricity costs, not the

14   hydrogen cost model.

15             THE COURT:  Is this just about electricity costs?

16             MS. YOUNG:  Could you please scroll up a little bit

17   higher on the page?

18             Yes, the language under the graph regarding Nikola's

19   model assumes average energy prices.

20             MS. ESTES:  This is the same thing.  These are

21   assumptions about electricity prices from their research on

22   electricity prices across the country.

23             MS. YOUNG:  And I believe there is testimony that

24   electricity is the largest input into the hydrogen model.

25             THE COURT:  This will be included.

Mae2Mil3

1          MS. YOUNG:  And the last one is DX 1610, page 13.

2     There it is "Nikola's model assumes."

3          THE COURT:  Okay.  This one will be included as well.

4          MS. YOUNG:  Thank you.

5          THE COURT:  That's it?

6          MR. MUKASEY:  That's all from us.

7          THE COURT:  So this is what I propose to send to the

8     jury.  We don't have to bring them out.  I propose to send them

9     a handwritten note from me:  "In response to your note, which

10    has been marked as Court Exhibit 1, the jury is referred to the

11    following exhibits," and then I will put, "Government Exhibit

12    281, page 25; Government Exhibits 250 and 250-A; Defense

13    Exhibit 1742, page 25; Defense Exhibits 34 and 35; Defense

14    Exhibits 1298, 1601, 1604, and 1610, page 13."  I will also

15    include, "If you have any additional questions on this topic

16    please let us know."

17          Any objection to that language.

18          MR. MUKASEY:  No objection.

19          (Pause).

20          THE COURT:  Okay.  So I propose that we make a copy of

21    this for you folks, and then we can give the original to the

22    jury.  It reads, "In response to your note, which has been

23    marked as Court Exhibit No. 1, the jury is referred to the

24    following exhibits:  GX 250 and 250-A; GX 281, page 5; DX 34

25    and 35; DX 1742, page 25; DX 1298; DX 1601; DX 1604; DX 1610

Mae2Mil3

 1    page 13.  Please let us know if you have any additional

 2    questions on this or any other topic," signed by myself.

 3            So we will send this back to the jury.  We will have

 4    copies made for you, and we will wait to hear from them.

 5            MS. YOUNG:  Your Honor, one question.  Is page 5

 6    indicated for DX 1601 and 1604?

 7            THE COURT:  It is not, but I can include that, page 5,

 8    page 5.

 9            MS. YOUNG:  And DX 1742?

10            THE COURT:  Page 25.

11            MS. YOUNG:  Perfect.  Thank you.

12            THE COURT:  Okay.

13            (Recess pending verdict)

14            (Jury not present; 1:45 p.m.)

15            THE COURT:  Everyone is here so should we put this on

16    the record?

17            COUNSEL:  Yes.

18            THE COURT:  All right, folks.  We have a second note

19    that's been marked Court Exhibit No. 2, and it reads in its

20    entirety as follows:  "Can we please have the testimony for

21    Peter Hicks."

22            They have asked for the entirety of the testimony.  My

23    understanding is that the government is preparing a transcript

24    of the entirety of that testimony which redacts any objections

25    that have been sustained, that redacts sidebars, and any other

Mae2Mil3

1   testimony that's been stricken.

2         To my mind, this is a purely mechanical process and

3   should not be controversial in any way.  So, Mr. Roos and

4   Mr. Mukasey, can I depend on you folks to agree to what can be

5   sent back to the jury?  And by the way, what I traditionally or

6   more recently have done is simply to provide the jury with

7   three or four copies of the transcript so that they can have it

8   in the jury room and do what they will with it.

9         Any objection to that?

10         MR. MUKASEY:  No.  And you can count on us to agree on

11   what goes back.

12         MR. ROOS:  No problem.

13         THE COURT:  Okay.  In that event, how long do you

14   think that will take?  Especially the three or four copies.

15         MR. ROOS:  I think the printing shouldn't be that

16   hard.  This witness I think maybe spanned -- was it just a day?

17         (Counsel confer)

18         MR. ROOS:  It's 149 pages, so I think we can probably

19   recreate four copies of that pretty quickly.

20         THE COURT:  Okay.  Wonderful.  I think we have gotten

21   you copies of the note itself, so when you have the copies

22   ready, just let Ms. Rivera know and she can provide them to the

23   jury.  Okay?

24         MR. ROOS:  Yes, your Honor.

25         MR. MUKASEY:  Yes.

Mae2Mil3

1            THE COURT:  Okay.  Thank you, folks.  See you later.

2            And by the way, we will try to get from the jury,

3    maybe when we give them these copies, whether they intend to go

4    past 2:30 today.

5            MR. ROOS:  Thank you, your Honor.

6            MR. MUKASEY:  Thank you.

7            (Recess pending verdict)

8            (Jury not present; 3:53 p.m.)

9            THE COURT:  Okay, folks.  We are on the record.  We

10   have received another note.  It is marked as Court Exhibit 3

11   and it reads in its entirety as follows:  "The jury has reached

12   a unanimous verdict."

13           I understand from the defense that they wish me to

14   poll the jury.  Accordingly, the jury will be polled.

15           Is there anything else that anyone wished to put on

16   the record at this time?

17           MR. PODOLSKY:  No, your Honor.

18           MR. MUKASEY:  No, Judge.

19           (Pause)

20           (Jury present; 4:15 p.m.)

21           THE COURT:  Everyone please be seated.

22           Ladies and gentlemen of the jury, we have received a

23   note which has been marked Court Exhibit 3, and it reads as

24   follows:  "The jury has reached a unanimous verdict."  It is

25   signed by your foreperson, Juror No. 1.

Mae2Mil3

1              Juror No. 1, do you have a verdict?

2              THE FOREPERSON:  Yes, we do.

3              THE COURT:  Ms. Rivera.

4              (Pause)

5              THE COURT:  Ms. Rivera, please take the verdict.

6              THE DEPUTY CLERK:  As to Count One, Securities Fraud

7     under Title 15, how do you find?

8              THE FOREPERSON:  Guilty.

9              THE DEPUTY CLERK:  As to Count Two, Securities Fraud

10    under Title 18, how do you find?

11             THE FOREPERSON:  Not guilty.

12             THE DEPUTY CLERK:  As to Count Three, Wire Fraud under

13    Title 18, how do you find?

14             THE FOREPERSON:  Guilty.

15             THE DEPUTY CLERK:  And Count Four, Wire Fraud under

16    Title 18, how do you find?

17             THE FOREPERSON:  Guilty.

18             THE COURT:  You may be seated.

19             Ladies and gentlemen, I'm going to ask a question of

20    each of you and you should answer yes or no.

21             Juror No. 1, is this your verdict?

22             JUROR:  Yes, it is.

23             THE COURT:  Juror No. 2, is this your verdict?

24             JUROR:  Yes.

25             THE COURT:  Juror No. 3, is this your verdict?

Mae2Mil3

```
 1              JUROR:  Yes.

 2              THE COURT:  Juror No. 4, is this your verdict?

 3              JUROR:  Yes.

 4              THE COURT:  Juror No. 5, is this your verdict?

 5              JUROR:  Yes.

 6              THE COURT:  Juror No. 6, is this your verdict?

 7              JUROR:  Yes.

 8              THE COURT:  Juror No. 7, is this your verdict?

 9              JUROR:  Yes.

10              THE COURT:  Juror No. 8, is this your verdict?

11              JUROR:  Yes.

12              THE COURT:  Juror No. 9, is this your verdict?

13              JUROR:  Yes.

14              THE COURT:  Juror No. 10, is this your verdict?

15              JUROR:  Yes.

16              THE COURT:  Juror No. 11, is this your verdict?

17              JUROR:  Yes.

18              THE COURT:  Juror No. 12, is this your verdict?

19              JUROR:  Yes.

20              THE COURT:  And so say you all.

21              Ladies and gentlemen, your service as jurors is ended.

22    I want to thank each and every one of you for the time and

23    attention that you have paid to this case.  It is obvious that

24    you have been very attentive throughout.  I want you to know as

25    well that our criminal justice system is the envy of the world
```

Mae2Mil3

and it is because of you, it is because when we have these

incredibly difficult decisions to make, we rely on the

collective wisdom of our neighbors.  That's why we only ask

people that live in this district to come and serve as jurors.

And we rely on your collective wisdom to ensure that something

approaching justice is ultimately done.

So I want to thank you.  At this point you can discuss

the case with whomever you want or you can decide not to

discuss the case.  You may be approached as you are leaving by

members perhaps of the litigation teams or members of the

press.  If you are approached and asked questions, you may

answer the questions if you wish or you may tell them that you

wish to go back to your normal life and they will be bound to

respect your wishes.

And if I could just ask, I know that some of you have

to leave, but if I could just ask you to stay a little bit

longer in the jury room so that I could come in and see you for

just a bit.  Okay?

(Jury dismissed)

THE COURT:  Everyone can be seated.

Mr. Mukasey, did you wish to make a motion at this

time or would you like to reserve?

MR. MUKASEY:  I think we will reserve and submit

something in writing, Judge.

THE COURT:  I'm sorry?

Mae2Mil3

1          MR. MUKASEY:  We will reserve and submit something in

2     writing.

3          THE COURT:  Okay.  Anything from the government?

4          MR. ROOS:  Two things, your Honor.  One is we think it

5     is appropriate to reexamine the bail conditions.  To be clear,

6     we are not asking for remand, but we do think that some

7     modification of the terms may be appropriate in light of the

8     conviction.  And the second would just be to set a sentencing

9     date.

10          THE COURT:  Okay.  The sentencing date will be set

11     three months out.

12          Mr. Milton, you will be interviewed as part of that

13     process and it is certainly likely that any motion practice may

14     affect that schedule, but to the extent that we set a

15     sentencing date, you will be interviewed by the probation

16     department as part of that process.  You can and should have

17     your lawyers with you during that interview.  And it is

18     entirely possible that members of your family with whom you

19     live may also be interviewed by the probation department.  And

20     I would ask that the defense lawyers coordinate with the

21     probation department so that process can take place as

22     efficiently as possible.

23          I am actually not aware of what the current conditions

24     are, Mr. Roos.

25          MR. ROOS:  Yes, your Honor.  So the current conditions

Mae2Mil3

1    are $100 million personal recognizance bond that -- so that's

2    an unsecured bond with, then, a subset of which is security.

3    So it was secured by two financially responsible persons and

4    two properties——one in Morgan, Utah, one in Coalville, Utah.

5    And just looking back quickly at the initial presentment, I

6    think the estimated value of those two combined was around $40

7    million, although I may be wrong.

8         Travel was restricted to several states, which has

9    been modified over time for a variety of reasons, all of which

10   I believe the government consented to.  Surrender of travel

11   documents and pretrial supervision as directed.

12        So in terms of potential modifications, I think there

13   are a few areas to explore.  The first is, and I will need

14   defense counsel's assistance on this, I think it is possible,

15   although I'm not positive, the Coalville property is the Peter

16   Hicks property.  If it's not, then I am mistaken.  I just want

17   to be sure that the property that's securing the bond is now

18   not property that's at least immediately subject to forfeiture

19   under Count Four.  So that's item number one.

20        I think item number two, in light of the defendant's

21   access to personal aircrafts, there should be a restriction

22   related to that.

23        THE COURT:  Restriction related to his use of aircraft

24   or travel restriction?

25        MR. ROOS:  Well, I think there is a travel restriction

Mae2Mil3

1    in place, and I think some form of location monitoring which

2    was not a prior condition would now be appropriate in light of

3    both his ownership of properties outside of the United

4    States -- a property outside of the United States and access to

5    aircrafts.

6          THE COURT:  Mr. Milton.

7          MR. MUKASEY:  Judge, Mr. Milton has been a model

8    bailee.  He has had absolutely no problems with travel, any

9    other bail condition.  We are talking about a $100 million

10   personal recognizance bond cosigned by two financially

11   responsible persons and property worth $40 million.  Sitting

12   right behind me are 15 people or 20 people who, you know,

13   monitor and live with and love Mr. Milton and make sure he is

14   here and make sure he is where he is supposed to be.

15         My understanding is Mr. Milton has had a wonderful

16   relationship with his Pretrial Services officer in Utah.  I

17   would oppose this.  Mr. Milton came here, stood trial, knew the

18   consequences, is going to go home and comply with every bit of

19   the bail that is already in place.  He is not running to the

20   Turks and Caicos and using his airplanes for nefarious

21   purposes.  One of the airplanes is a source of income to him

22   because it gets leased out.

23         So I would respectfully ask -- and I appreciate

24   Mr. Roos's concerns, but I would respectfully ask that we

25   continue the bail conditions because there has been absolutely

Mae2Mil3

1    no reason to modify them laid out.  We are in exactly the same

2    position as we were an hour ago.

3              THE COURT:  Well, I don't think that we are in exactly

4    the same position that we were an hour ago, but I agree with

5    the balance of your arguments, Mr. Mukasey.  Mr. Milton

6    obviously has always appeared as required.  He's been here

7    throughout the trial of course.  It appears clear to me that he

8    has a strong basis of support and significant reasons not to

9    flee and it is a substantial bail package that is in place.  So

10   I'm not going to add any additional conditions, Mr. Roos.

11             MR. ROOS:  I guess one, if I could just try my luck a

12   little further, would be some sort of restriction on the

13   private aircraft usage.  I know in other cases, for instance,

14   like a secondary custodian has been attached to the aircraft,

15   some other person who needs approval.

16             I totally appreciate it and I'm not disputing anything

17   Mr. Mukasey said.  We obviously did not seek remand despite the

18   conviction for a reason.  We totally agree that Mr. Milton has

19   been in compliance with his conditions.  The reality is, given

20   his net worth, given what I think are about $300 million in

21   stock sales, the access to private aircraft, and the overseas

22   property, we think some sort of adjustment is appropriate.  I'm

23   not trying to make it unduly difficult for him, but I just

24   think some sort of adjustment is necessary.

25             THE COURT:  I don't agree, so I'm not going to adjust

Mae2Mil3

1    the bail conditions at this time.

2              Mr. Mukasey, 30 days to file any papers?

3              MR. MUKASEY:  Yes.  We will submit Rule 29 and Rule 33

4    motions within 30 days.

5              THE COURT:  Very well, and we will set a sentencing

6    date so that we have a control date for three months out.

7    Ms. Rivera.

8              THE DEPUTY CLERK:  Yes.  January 27, 2023, at 11 a.m.

9              THE COURT:  And with that I think we are adjourned.

10             I want to thank the attorneys for their professional

11   courtesies, at least to me, throughout the entirety of this

12   trial.  Thank you very, very much.

13             We are adjourned.

14                              oOo

15

16

17

18

19

20

21

22

23

24

25